# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | CR419-149 |
| | ) | |
| BARRY WRIGHT, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Barry Wright is indicted on one count of possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d), and one count of use of fire or explosive to commit a felony, in violation of 18 U.S.C. § 844(h). Doc. 2 (Indictment). Wright's ex-wife suffered severe injuries when the vehicle she was driving "suddenly exploded." *See, e.g.*, doc. 28-2 at 5. Investigators later found an incendiary device under the driver's seat. *Id.* Wright was arrested on state charges in connection with the explosion on July 10, 2019. Doc. 124-1 at 2. He was transferred to federal custody on August 28, 2019, 4:19-mj-00062, doc. 59 (Initial Appearance Minute Entry), and the Court held a detention hearing on August 30, 2019. 4:19-mj-00062, doc. 66 (Detention Hearing Minute Entry). The Court granted the Government's motion for detention at the

1

hearing, concluding that it carried its burden of showing that "no condition or combination of conditions of release [would] reasonably assure [Wright's]" appearance as required. 4:19-mj-00062, doc. 81 at 62-63 (Detention Hearing Transcript).

Before the Court is Wright's Motion for Release on Due Process Grounds. Doc. 124. He argues that the length of his pretrial detention, combined with other factors in this case, mandates his release under the Due Process Clause of the Fifth Amendment to the United States Constitution. *See, e.g.*, doc. 124 at 4-13. The Government responded in opposition, doc. 133, and Wright replied, doc. 136. The Court received oral argument at a September 2, 2022 hearing. Doc. 146 (Minute Entry). Wright had been detained for approximately 36 months at the time of that hearing, and there is no trial scheduled in this case. For the following reasons, the Motion should be **GRANTED**. Doc. 124.

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "[D]ue process places no bright-line limit on the length of pretrial detention", *United States v. Oury*, 452 F. Supp. 3d 1364, 1370 (S.D. Ga. 2020) (quoting *United States v. Briggs*, 697 F.3d

98, 101 (2d Cir. 2012)); however, the Eleventh Circuit has explained "that 'at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional.' " *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990) (quoting *United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2d Cir. 1986)). Although the Eleventh Circuit made clear in *Quartermaine* that due process imposes some upper bound on the length of permissible pretrial detention, it did not specify what that upper bound is, nor what specific analysis applies. *See Quartermaine*, 913 F.2d at 918. Moreover, the Eleventh Circuit has never explicitly endorsed a test to evaluate whether any particular detention exceeds the bounds of due process. *Oury*, 452 F. Supp. 3d at 1369.

This Court has adopted the Second Circuit's four-part test to evaluate whether and when pretrial detention becomes unconstitutionally prolonged. *Oury*, 452 F. Supp. 3d at 1370 (quoting *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000)). "To determine whether the length of pretrial detention has become unconstitutionally excessive, a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the

charges,[1] and (4) the strength of the evidence upon which detention was based, *i.e.*, the evidence of risk of flight and dangerousness." *Id.* (quotations and citation omitted). "[S]ome courts have added, as an additional factor, a comparison between the length of the likely sentence the defendant faces and the length of pretrial detention." *United States v. Cos*, 2007 WL 1302580, at *3 (D.N.M. Apr. 17, 2007).[2]

This multifactor test "requires assessment on a case-by-case basis," *Gonzales Claudio*, 806 F.2d at 340, and "[c]ourts that have canvassed the law [in this context] have . . . suggest[ed] that, the longer the detention, the more weighty countervailing concerns must be." *United States v. Omar*, 157 F. Supp. 3d 707, 716-17 (M.D. Tenn. 2016) (citing, e.g., *Cos*, 2006 WL 4061168, at *6-7).[3] Where, as here, the length of pretrial

---

[1] "While earlier cases framed the test as a three-factor standard, the Second Circuit has more recently included the gravity of the charges as an additional factor." *United States v. Barone*, 2010 WL 2366581, at *2 n.4 (S.D.N.Y. June 11, 2010).

[2] *See also United States v. Ailemen*, 165 F.R.D. 571, 591 n.26 (N.D. Cal. 1996) (". . . [C]ases suggest aiding the due process inquiry by comparing the length of expected detention to the prison sentence a defendant would serve if convicted."); *United States v. Lofranco*, 620 F. Supp. 1324, 1325 (N.D.N.Y. 1985) ("[H]olding a defendant without bail for longer than he would serve if tried and convicted must also violate due process.").

[3] *See also Briggs*, 697 F.3d at 101 ("The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance").

4

detention exceeds two years, "courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention." *Cos*, 2006 WL 4061168, at *7.[4] The length of pretrial detention, however, "is not dispositive and will rarely by itself offend due process." *El-Hage*, 213 F.3d at 79 (quotations and citations omitted).[5]

The Government does not dispute that the length of Wright's 36-month detention period weighs in favor of release. *See* doc. doc. 133 at

---

[4] *See also United States v. Flores*, 2018 WL 3530837, at *2 (C.D. Cal. July 20, 2018) (quoting *United Staes v. Ailemen*, 165 F.R.D. 571, 591 (When pretrial detention is expected to last over two years, " 'the length of detention prong of the due process analysis weighs strongly in favor of releas[e,]' and it therefore 'follows that the other two prongs−government responsibility for delay and threats to the government's regulatory interests (flight/dangerousness)−will have to weigh strongly in favor of the government to justify continued detention.' ").

[5] *But see United States v. Rodriguez*, 2012 WL 6690197, at *10-11 (W.D.N.Y. Dec. 21, 2012) (pretrial detention period of 50 months "tends to make this case the 'rare' instance when the total length of pretrial detention by itself offends due process."); *see also United States v. Hofstetter*, 2017 WL 4293263, at *2 (E.D. Tenn. Sept. 27, 2017) (projected 44 months of pretrial detention approaches [those cases] in which [detention time] alone was determinative or nearly so."); *United States v. Speed*, 2013 WL 6531950, at *2, *5 (W.D.N.Y. Dec. 12, 2013) (upholding expected 55-month pretrial detention, but noting that "there could come a point, in the near future, where the length of detention alone warrants reconsideration of defendant's [release] request.").

10; *see also id.* at 17 (acknowledging that Wright's "length of detention is significant").[6] As discussed above, however, the length of Wright's pretrial detention period is not dispositive. *See El-Hage*, 213 F.3d at 79.

To evaluate the Government's responsibility for pretrial delay, "the Court need not determine with precision the amount of . . . delay attributable to the [Government] or assess the extent to which the Government may have been 'at fault' in contributing to the delay. . . . Rather, it is sufficient to determine whether 'even if not deserving of blame or fault, the Government bears a responsibility for a [significant] portion of the delay.' " *United States v. Rush*, 2017 WL 6541436, at *5 (E.D. Mo. Dec. 1, 2017) (citations omitted) (quoting *Gonzales Claudio*, 806 F.2d at 342).[7] "[D]elay caused even by neutral reasons, such as strategic

---

[6] *See also United States v. Bailynson*, 2020 WL 5367320, at *11 (S.D. Fla. Sept. 8, 2020) ("[T]here is clearly more than just the prospect of a lengthy period of pretrial detention. There is, in fact, 26 months of pretrial detention currently, and the prospect of 31 months or more of pretrial detention depending on when the case goes to trial[.]"); *United States v. Hofstetter*, 2017 WL 4079181, at *6 (E.D. Tenn. Sept. 14, 2017) (31 months of pretrial detention, combined with a projected total of 44 months until trial "weighs heavily in favor of finding a due process violation"); *Cos*, 2006 WL 4061168, at *7 (referring to detention period over two years as "the far end of the spectrum" and "very long").

[7] *See also United States v. Davis*, 2020 WL 8614599, at *11 (E.D. Tenn. Dec. 17, 2020) ("[T]he government need not be 'at fault' for the Court to deem it responsible for delay."); *Hofstetter*, 2017 WL 4079181, at *7 ("The Court respectfully disagrees that it must find that the delay was unnecessary or that the Government was dilatory in order to attribute delay to the Government.").

6

case management choices that foreseeably extend the case, may be attributable to the [G]overnment." *Id.*

The parties dispute the calculation and allocation of responsibility for various delay periods during this case.[8] The Court acknowledges that this case is complex, *see* doc. 16 (Order designating this case complex under 18 U.S.C. § 3161(h)(7)(B)), and that Wright has added to its complexity by filing numerous suppression motions. *See* docs. 27, 28, 29, 30, 32, 33, & 34.[9] Further, the parties agree that much of the delay in this case is attributable to the COVID-19 pandemic, *see, e.g.*, doc. 133 at 5-8; doc. 136 at 11-12, which is not the Government's "responsibility." *See Arrington*, 2022 WL 2586501, at *6. The Court, however, still finds that

---

[8] *Compare, e.g.*, doc. 133 at 12-15 (the Government argues a 15-month delay attributable to the COVID-19 pandemic and 15-month delay attributable to "litigation" are "neutral"), *with* doc. 136 at 11-13 (Wright disputes the Government's calculations and responsibility allocation).

[9] *See, e.g., United States v. Raniere*, 2019 WL 469305, at *3 (E.D.N.Y. Feb. 5, 2019) (complexity of case "weigh[s] against a finding that the Government is primarily responsible for the delay of [defendant's] trial."); *see also United States v. Taylor*, 602 F. App'x 713, 717 (10th Cir. 2015) (Delays caused by a defendant's "numerous pretrial motions" are not attributable to the Government.); *United States v. Schulte*, 2022 WL 1316210, at *3 (2d Cir. May 3, 2022) (quoting *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994)) ("[W]e have recognized that 'the importance and complexity of [a] case and the extensive evidence' entailed in a case can 'reasonably require a lengthy period for pretrial preparation.'"); *United States v. Arrington*, 2022 WL 1784808, at *9 (W.D.N.Y. June 1, 2022) ("Defendant has filed a multitude of non-dispositive and dispositive pretrial motions of varying levels of complexity[.] . . . This delay is properly attributable to Defendant.").

7

the Government is responsible for a "significant portion" of delay in this case.

The Government acknowledges its responsibility for an 8-month delay attributable to its requests for pretrial motion deadline extensions. Doc. 133 at 12-14. Further, the Court agrees with Wright, doc. 136 at 12-13, that some of the delay in this case is attributable to the Government's litigation strategy regarding his motion to suppress evidence obtained pursuant to a warrant to search an address in Savannah, doc. 28 (the "66th St. Warrant"). After a July 7, 2021 evidentiary hearing, doc. 87 (Minute Entry), the undersigned recommended that the District Judge grant the suppression motion, finding that the issuing magistrate did not have a substantial basis for finding probable cause, and that the exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897, 914 (1984), did not apply. *See* doc. 100 at 15-17. (Report and Recommendation ("R&R")). In its April 29, 2022 objections to the R&R, the Government raised a new argument against suppression. *See* doc. 107 at 24-26 (Government's objection); doc. 111 at 7-9 (District Judge's discussion of the new argument). The District Judge remanded consideration of the motion to afford the undersigned an opportunity to

consider the new argument. *Id.* at 8 (directing Wright to file a response to the new argument). After the parties filed briefs regarding the argument, docs. 112 & 114, the undersigned held a status conference. Doc. 116 (Minute Entry). At the conference, the Government moved to reopen the evidentiary hearing. *Id.*; *see also* doc. 117 (Oral Motion). It represented that the magistrate who authorized the 66th St. Warrant was willing to testify as to whether the officer orally supplemented the warrant application. Doc. 116. It also indicated that it might offer the testimony of an officer who was present during the warrant application. *Id.*

The Court afforded the Government an opportunity to present additional testimony on a provisional basis to allow the Court to assess the content and credibility of the additional witnesses' testimony before entering a recommendation on whether the District Judge should consider it. Doc. 120 at 7. The Court held the provisional evidentiary hearing on September 2, 2022. Doc. 146 (Minute Entry); *see also* doc. 126 at 1 (Government's unopposed motion to continue the evidentiary hearing from August 15, 2022 to September 2, 2022). The 66th St. Warrant suppression motion remains pending. Doc. 28. The

undersigned must still make a recommendation on whether the District Judge should consider the additional testimony offered at the hearing, and recommend a disposition. The parties will have 14 days to object to the undersigned's recommendations, *see* Fed. R. Civ. P. 72(b)(2), and the District Judge will enter a final disposition on the motion. Assuming the delay attributable to the Government's newly-raised argument began running on the date of its objection, April 29, 2022, doc. 107, the delay associated with the Government's failure to raise its argument is over 4.5 months, and counting.[10] The Court finds that 12.5 months of delay attributable to the Government constitutes a "significant portion of the

---

[10] Wright also argues that the 66th St. Motion's pendency period is a delay attributable to the Government. Doc. 136 at 13; *compare* doc. 87 (evidentiary hearing on 66th St. Motion held July 6, 2021), *with* doc. 100 (recommended disposition of 66th St. Motion entered April 4, 2022). Several courts have suggested that motion pendency periods can count as "delays" attributable to the Government. *See, e.g.*, *Ailemen*, 165 F.R.D. at 581 (considering "the extent to which the government (the prosecution and/or the court system) bears responsibility for pretrial delay"); *see also United States v. Babitchenko*, 2019 WL 3402004, at *8 (D. Idaho July 26, 2019) ("The second . . . factor concerns the Government's (the prosecution and/or the court system) role in any pretrial delay. . . . There is likely some element of the court system's connection to the delay, because the dockets (both criminal and civil) are enormously overburdened in the District of Idaho."). Given the Court's finding that over 12 months of delay attributable to the Government constitutes a "significant portion of the delay" in this case, *Davis*, 2020 WL 8614599, at *11, the Court need not decide whether to attribute the motion's pendency period to the Government.

delay" in this case.[11]  Doc. 124.  Accordingly, the second factor weighs in favor of release.[12]

Wright does not dispute the "gravity" of the charged crimes: one count of possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d), and one count of use of fire or explosive to commit a felony, in violation of 18 U.S.C. § 844(h).  Doc. 2 (Indictment); *see generally* doc. 124; *see also* doc. 136 at 13 (Wright's brief includes a section

---

[11] *See United States v. Musaibli*, 2022 WL 1695765, at *9-10 (E.D. Mich. May 26, 2022) ("In total, the government bears sole responsibility for at least 14 months out of the 46-month ongoing delay of this trial from the initial scheduled trial date. . . . [T]he fact that the government bears significant culpability for causing an almost equal portion of the culpable delay versus the defense certainly prompts serious due process concerns and weighs in favor of pretrial release."); *Rush*, 2017 WL 6541436, at *11 ("strategic choices by the government", inter alia, resulting in "12 months or more" of delay constitutes "significant delay" in case involving a 44-month pretrial detention period); *Hofstetter*, 2017 WL 4079181, at *8 (finding, in case of 31 months of pretrial detention, "the Government is responsible for twenty-two and one-half (22 ½) months of delay in the trial[.]  The Court finds this to be a *significant* delay." (emphasis in original)).

[12] Although courts have recognized that the second factor "takes the Government's responsibility into account, not the [Defendant's]", *United States v. Acevedo-Baldera*, 2020 WL 9156933, at *11 (D. Conn. Nov. 23, 2020), several courts have discussed defendants' responsibility for delays in this context. *See, e.g.*, *United States v. Nero*, 2021 WL 1137988, at *3 (E.D. Mich. Mar. 25, 2021) ("[A] defendant's responsibility for causing delay is just one of the factors to be balanced in evaluating whether the duration of pretrial detention offends due process."); *United States v. Xu*, 2018 WL 2435192, at *3 (D. Del. May 30, 2018) ("When the defendant is the party responsible for the pretrial delay, there is no due process violation."). Although Wright has filed numerous suppression motions, as discussed, the Government has not suggested that his motions practice "could have proceeded in a more efficient or practical way." *United States v. Bobbitt*, 2013 WL 3049167, at *6 (W.D.N.Y. June 17, 2013).  The Court cannot conclude that Wright bears significant responsibility for the delays in this case.

11

titled "The Gravity of the Charges and Strength of Evidence Favors Release", but does not explain why the "gravity" factor favors release.). The third factor therefore weighs in favor of continued detention.

The fourth factor requires the Court to consider "the strength of the evidence upon which detention was based, *i.e.*, the evidence of risk of flight and dangerousness." *Oury*, 452 F. Supp. 3d at 1370 (quoting *El-Hage*, 213 F.3d at 79); *see also Rush*, 2017 WL 6541436, at *12 (characterizing this factor as "the government's regulatory interests in pretrial detention"); *United States v. Tawfik*, 2020 WL 9264552, at *2 (E.D. Mich. Dec. 11, 2020) (same).[13] Courts have suggested that this fourth factor resembles the "risk-of-flight" and "danger-to-the-community" considerations in 18 U.S.C. § 3142(g)(4).[14] There are,

---

[13] Courts have identified a third "regulatory interest" weighing in favor of release, in addition to "dangerousness" and "risk-of-flight": "protecting the integrity of the trial process (by, for example, preventing a defendant from attempting to intimidate witnesses, jurors, or others involved in the prosecution)[.]" *Rush*, 2017 WL 6541436, at *12 (quoting *Aileman*, 165 F.R.D. at 595). The closest the Government comes to arguing that this interest weighs in favor of continued detention is their contention that, if Wright is released, he should not be permitted to reside with an individual in Washington who is "a potential witness in this case." Doc. 145 at 1. The Government, however, does not argue that Wright's release *in general* would pose a risk to this interest. The Court can craft release conditions to mitigate the risk of Wright's contract with potential witnesses.

[14] *See, e.g.*, *Babitchenko*, 2019 WL 3402004, at *9 (evaluating "the Bail Reform Factors in the context of a substantive due process analysis"); *United States v. Kahn*, 2018 WL 9437395, at *9 (D. Wyo. Oct. 3, 2018) (the "strength of evidence upon which

however, "differences between a Bail Reform Act decision and an evaluation of a potential substantive due process violation[.]" *United States v. Babichenko*, 2019 WL 3558484, at *11 (D. Idaho Aug. 5, 2019). For example, "[a] due process violation provides a constitutional basis for the Court to reconsider its detention order that is separate from the question of whether a detention hearing may be reopened under the Bail Reform Act." *Davis*, 2020 WL 8614599, at *11. Further, "the justification for detention in the face of a due process challenge over the length of pretrial detention is far more compelling when detention is based upon a serious risk of danger to any person or the community, than if detention is based upon a risk of non-appearance." *Babichenko*, 2019 WL 3558484, at *11 (noting that "due process concerns take on a heightened importance" where detention is based solely on risk-of-flight).

The undersigned detained Wright on risk-of-flight grounds, and determined that the Government did not carry its burden of showing the

---

detention is based" factor in the due process analysis "essentially reconsiders the risk-of-flight and danger-to-the-community considerations that go into a detention hearing"); *Rodriguez*, 2012 WL 6690197, at *13 (explaining that the "details of the Court's [risk of flight/danger to the community] analysis appears" in the portion of the Court's order discussing reconsideration of bail).

13

propriety of detention on dangerousness grounds.[15] Although the Government "continues to maintain that [Wright] is a danger to the community and to the victim in this case", it does not identify any circumstances which alter the Court's prior determination. *See* doc. 133 at 16. Accordingly, the Court cannot conclude that Wright's release would pose an "extraordinary threat" to the Government's interest in preventing danger to the community. *Davis*, 2020 WL 8614599, at *11.

The Government contends that the "risk-of-flight" consideration weighs against release because Wright "has the means, motive, and the money to flee. He faces a potential sentence of 20 years, has access to international contacts, has international ties, and has previously concealed his assets in his divorce proceeding." Doc. 133 at 16-17. Despite the persistence of a flight risk, the Court finds that Wright's release would not pose an "extraordinary threat" to the Government's interest in bringing him to trial, especially given the "heightened scrutiny

---

[15] *See* 4:19-mj-062, doc. 81 at 61-62 (Detention Hearing Transcript) ("I am not certain that the government is able to carry its burden by clear and convincing evidence that no combination of conditions will reasonably assure the safety of other persons in the community. It does appear that even if we assume these acts to have been true, and of course, the defendant is presumed innocent of them, but even if they were presumed to be true, it would be a lone act of violence separate and apart from a history that's inconsistent with that.").

14

that the Court should give to the prolonged pretrial detention in this case[.]" *Hofstetter*, 2017 WL 4079181, at *10; *see also Babichenko*, 2019 WL 3558484, at *11 ("the justification for detention in the face of a due process challenge over the length of pretrial detention is far more compelling when detention is based upon a serious risk of danger to any person or the community, than if detention is based upon a risk of non-appearance."); *see also Oreana,* 986 F.2d at 631 ("[T]he constitutional limits on a detention based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight. In the former case, release risks injury to others, while in the latter case, release risks only the loss of a conviction."). The Court continues to find that some risk of flight remains, and concludes that factor four weighs against Wright's release, albeit mildly.

Under the fifth factor, the Court compares "the length of the likely sentence the defendant faces and the length of pretrial detention." *Cos*, 2007 WL 1302580 at *3; *United States v. Shareef*, 907 F. Supp. 1481, 1484 (D. Kan. 1995) ("[F]undamental fairness requires that defendants, presumed innocent, not be required to serve a major portion of the sentence to which he or she would be subject prior to a determination of

15

guilt."). Although Wright's pretrial detention period of over 36 months is lengthy, this factor weighs against release because he faces "a potential sentence of 20 years." Doc. 133 at 16; *see generally* docs. 124 & 136 (Wright does not address this factor in his briefing).

In sum, the "length of pretrial detention" and "Government responsibility for delay" factors weigh in favor of release. And the "gravity of charged crimes", "strength of the evidence upon which detention was based", and "comparison of detention and potential sentence periods" weigh in favor of continued detention. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Court recognizes the gravity of the charges against Wright and the risks associated with his release; however, "the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks." *Gonzales Claudio*, 806 F.2d at 343. After weighing the factors, the Court **RECOMMENDS** that the Release Motion be **GRANTED**.[16] Doc. 124.

---

[16] The Court has identified several cases in which magistrate judges recommend pretrial release on due process grounds, and other cases where magistrate judges order pretrial release. *Compare, e.g., Rush*, 2017 WL 6541436, at *13-14 (magistrate judge recommending pretrial release on due process grounds), *with Rodriguez*, 2012

If the District Judge adopts this R&R, the United States Probation Office ("USPO") is **DIRECTED** to provide the Court a report containing bail conditions it deems appropriate within 14 days from the date of the District Judge's adoption. If the District Judge adopts this R&R, the Court anticipates that the Government may appeal that disposition. Accordingly, Wright's release is **STAYED** for 14 days following the District Judge's disposition of the Release Motion to afford the Government an opportunity to appeal the disposition. If the Government appeals that disposition, Wright's release will remain **STAYED** during the pendency of the appeal. The Court will hold a hearing on the appropriate conditions of release upon the stay's conclusion.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time

---

WL 6690197, at *14 (magistrate judge ordering pretrial release on due process grounds). Given the equivocal authority, the undersigned has issued this Report and Recommendation.

to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 13th day of October, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA