**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

UNITED STATES OF AMERICA,

  v.

BARRY WRIGHT,

  Defendant.

CASE NO.: 4:19-cr-149

## O R D E R

Before the Court is the Magistrate Judge's October 14, 2022 Report and Recommendation ("R&R"), (doc. 148), to which the Government has filed objections, (doc. 154).   The Magistrate Judge recommended that the Court grant Wright's Motion for Release on Due Process Grounds (the "Release Motion"), (doc. 124).   (Doc. 148.)   For the following reasons and after a careful *de novo* review of the entire record,[1] the Government's objections are **OVERRULED**, (doc. 154), and the Court **ADOPTS** the R&R, in part, and **DECLINES** to **ADOPT** the R&R, in part. (Doc. 148.)

## BACKGROUND

As discussed in the Court's prior Order, Wright's ex-wife's vehicle "suddenly exploded" while she was driving.   (Doc. 111, pp. 2.)   Investigators subsequently found an incendiary device under the driver's seat consisting of circuit boards, switches, wires, batteries, plastic bottles,

---

[1]   The Magistrate Judge issued an R&R pursuant to 28 U.S.C. § 636(b)(1)(B) given the "equivocal authority" regarding his authority to dispose of a pretrial due process release motion via order, or only recommend a disposition.   (Doc. 148, pp. 16-17 n.16 (citing United States v. Rush, 2017 WL 6541436, at *13-14 (E.D. Mo. Dec. 1, 2017); United States v. Rodriguez, 2012 WL 6690197, at *14 (W.D.N.Y. Dec. 21, 2012)).)   No party has objected to that approach.   See generally docket.   Accordingly, the Court reviews the R&R under a *de novo* standard of review, as opposed to the "clearly erroneous or contrary to law" standard applicable to orders.   See 28 U.S.C. § 636(b)(1).

accelerant, and cardboard cylinders which tested positive for chemicals commonly found in boat flares.   (Id.)   As the Magistrate Judge explained, Wright was arrested on state charges in connection with the explosion on July 10, 2019, and transferred to federal custody on August 28, 2019.  (Doc. 148, p. 1.)   The Court granted the Government's motion for detention at Wright's detention hearing, finding that it carried its burden of showing that "no condition or combination of conditions of release [would] reasonably assure [Wright's]" appearance as required.   (Id., p. 2 (quoting 4:19-mj-00062, doc. 81 at 62-63).)

The Magistrate Judge held a hearing on Wright's Release Motion, (doc. 146 (Minute Entry)); at the time of the hearing, Wright's pretrial detention period was approximately 36 months.   (See doc. 148, p. 2.)   The Magistrate Judge recommended that Wright's motion be granted, finding that the applicable factors balanced in favor of release.   (See, e.g., doc. 148, p. 16.)   The Government objects, arguing that the Magistrate Judge erred by (1) attributing 4.5 months of the delay in this case to the Government's litigation strategy regarding Wright's Motion to Suppress Evidence seized from his residence located on 66th St. in Savannah, Georgia,[2] (doc. 28), and (2) recommending release despite finding that a majority of the due process factors weigh against release.   (Doc. 154, pp. 3, 7.)

## ANALYSIS

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"   U.S. Const. amend. V.   As the Magistrate Judge explained, although " 'due process places no bright-line limit on the length of pretrial detention,'" United States v. Oury, 452 F. Supp. 3d 1364, 1370 (S.D. Ga. 2020) (quoting United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012)), "at some point and under some circumstances, the

---

[2]  The Court refers to the suppression motion as the "66th St. Motion."

duration of pretrial detention becomes unconstitutional."  United States v. Gonzales Claudio, 806 F.2d 334, 339 (2d Cir. 1986).  (See doc. 148, pp. 2-3.)

This Court has adopted the Second Circuit's four-part test to evaluate whether and when pretrial detention becomes unconstitutionally prolonged.  Oury, 452 F. Supp. 3d at 1369-70. Using that test, "[t]o determine whether the length of pretrial detention has become unconstitutionally excessive, a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, i.e., the evidence of risk of flight and dangerousness." Id. at 1370 (quotations omitted) (citing United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000)). "[S]ome courts have added, as an additional factor, a comparison between the length of the likely sentence the defendant faces and the length of pretrial detention."  United States v. Cos, 2006 WL 4061168, at *3 (D.N.M. Nov. 15, 2006).   Where, as here, the length of pretrial detention exceeds two years, "courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention."  Id. at *7.

**I.    The Magistrate Judge did not err by finding that the second factor weighs against continued detention.**

The Magistrate Judge attributed 12.5 months of delay to the Government under the second factor.  (See doc. 148, p. 10.)   He calculated the delay by adding the 8 months of delay for which the Government concedes it is responsible, (see, e.g., doc. 133, p. 12), and 4.5 months of delay attributable to the Government's "litigation strategy" regarding Wright's 66th St. Motion, (doc. 28).  (Doc. 148, pp. 8, 10.)  The R&R summarizes the litigation strategy as follows:

> After a July 7, 2021 evidentiary hearing, . . . the [Magistrate Judge] recommended that the District Judge grant the [66th St. Motion.]  . . .  In its . . . objections to the R&R, the Government raised a new argument against suppression. . . .  The District Judge remanded consideration of the motion to afford the [Magistrate Judge] an opportunity to consider the new argument.  . . .  After the parties filed briefs regarding the argument . . . the [Magistrate Judge] held a status conference.   . . .   At the conference, the Government moved to reopen the evidentiary hearing. . . .

> The [Magistrate Judge] afforded the Government an opportunity to present additional testimony on a provisional basis to allow [him] to assess the content and credibility of the additional witnesses' testimony before entering a recommendation on whether the [Court] should consider it.   . . .   [He] held the provisional evidentiary hearing[, and the] 66th St. [Motion] remains pending.   The [Magistrate Judge] must still make a recommendation on whether the [Court] should consider the additional testimony offered at the hearing, and recommend a disposition.   The parties will have 14 days to object to the [Magistrate Judge's] recommendations, . . . and the [Court] will enter a final disposition on the motion.   Assuming the delay attributable to the Government's newly-raised argument began running on the date of its objection, April 29, 2022, doc. 107, the delay associated with [its] failure to raise its argument is over 4.5 months, and counting.

(Doc. 148, pp. 8-10 (citations omitted).)

The Government asserts that its litigation strategy is not "the type of intentionally dilatory conduct required to trigger government responsibility for delay."  (Doc. 154, p. 8.)  The Court agrees that there is no indication that the Government intended to delay this case by asserting its new suppression argument.   Courts, however, have rejected the Government's position that the second factor requires dilatory Government conduct intended to cause delay.   See, e.g., United States v. Hofstetter, 2017 WL 4079181, at *7 (E.D. Tenn. Sept. 14, 2017) ("The Court respectfully disagrees that it must find that the delay was unnecessary or that the Government was dilatory in order to attribute delay to the Government.").   "Rather, it is sufficient to determine whether 'even if not deserving of blame or fault, the Government bears a responsibility for a [significant] portion of the delay.' "   Rush, 2017 WL 6541436, at *5 (quoting Gonzales Claudio, 806 F.2d at 342-43).   Although "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage" weigh more heavily against the Government than "neutral reasons such as negligence",

United States v. Robinson, 455 F.3d 602, 607 (6th Cir. 2006), quoted in United States v. Davis, 2020 WL 8614599, at *9 (E.D. Tenn. Dec. 17, 2020), courts have reiterated that "delay caused even by neutral reasons, such as strategic case management choices that foreseeably extend the case, may be attributable to the [G]overnment."   Rush, 2017 WL 6541436, at *5; see also Hofstetter, 2017 WL 4079181, at *7 (recognizing that the Supreme Court, in analyzing potential Sixth Amendment violations, has attributed negligent or even neutral reasons for delaying trial to the Government).   In evaluating the second factor, courts also consider whether delay is attributable to the defendant, United States v. Taylor, 602 F. App'x 713, 717 (10th Cir. 2015) (denying motion for release on due process grounds when "most of the delay in proceeding to trial is attributable to [Defendant]"),[3] or the "court system", United States v. Ailemen, 165 F.R.D. 571, 581 (N.D. Cal. 1996).

The Magistrate Judge did not err by concluding that the second factor weighs in favor of release.   (Doc. 148, p. 10-11.)   This is not a case where "fingers point to all quarters, so to speak" regarding the delay attribution, United States v. Babichenko, 2019 WL 3558484, at *9 (D. Idaho Aug. 5, 2019).   The Government does not explicitly argue that Wright is responsible for any delay.[4]   In contrast, it concedes it is responsible for *some* delay, but contends that its opposition to the 66th St. Motion was "vigorous litigation," and not additional delay.   (Doc. 154, pp. 7, 10.) However, its failure to raise its new argument until it objected to the Magistrate Judge's R&R was a "strategic case management choice[ ] that foreseeably extend[ed] the case . . . ."   Rush, 2017

---

[3]   But see United States v. Acevedo-Baldera, 2020 WL 9156933, at *11 (D. Conn. Nov. 23, 2020) (the second factor "takes the Government's responsibility into account, not [Defendant's]").

[4]   (See, e.g., doc. 133, p. 12 ("The United States respectfully submits that of the 36 months, an eight-month delay may be attributed to the government, a fifteen-month delay may be attributed to [COVID]-19, and a thirteen-month delay may be attributed to litigation."); id., p. 15 ("The United States attributes a fifteen-month delay to litigation, a neutral factor."); but see doc. 154, p. 11 ("Pursuing his own vigorous litigation, Wright filed nine motions to suppress.").)

WL 6541436, at *5.   The Government initially submitted a single omnibus response to nine of Wright's suppression motions, briefly arguing that the Court should deny all nine motions pursuant to the Leon exception because officers obtained warrants for their searches:

> In this case, the officers dutifully obtained search warrants from a judge and executed the warrants as directed by its terms.   The warrants are "prima-facie proof that the officers acted reasonably in conducting the search or seizure. . . ."   [Cit.] There is "literally nothing more the policeman can do in seeking to comply with the law" once they have obtained a warrant and executed it as directed by its terms. [Cit.]   Law enforcement acted in good faith each time they sought a warrant and their conduct did not violate the Fourth Amendment. . . . It was objectively reasonable for these officers to rely on the warrants, not only in light of [an issuing magistrate's] determination that the warrant was supported by probable cause, but also in light of the precedent authorizing similarly drafted warrants.

(Doc. 46, p. 30.)   The Government argued for the first time in its objection that suppression is unwarranted because any deficiency in this specific affidavit was not "sufficiently deliberate," and that the cost of suppression would therefore outweigh the benefit of deterring future misconduct. (Doc. 107, pp. 24-26).)   Although Wright has not shown that this strategy was intended to delay the case, "the Government has made choices throughout the duration of this case, and choices matter." Rodriguez, 2012 WL 6690197, at *12.   Accordingly, the Court agrees with the Magistrate Judge that the delay associated with the Government's newly-raised argument is attributable to the Government.   (Doc. 148, pp. 7-8.)   Further, the Court agrees with the Magistrate Judge's calculation of 4.5 months associated with that delay, (doc. 148, pp. 9-10), to which the Government does not object.   (See, e.g., doc. 154, pp. 20-22 (arguing that "[r]emoving the 4.5 months from the magistrate's calculation leaves the government responsible for the 8-month delay", which is not "significant").)

Some of the delay in this case is likely attributable to the COVID-19 pandemic, which "is beyond the [G]overnment's control."   United States v. Nero, 854 F. App'x 14, 18 (6th Cir. 2021). Further, "[t]here is likely some element of the court system's connection to the delay" given the

time between the initial evidentiary hearing, (doc. 87 (Minute Entry)), and the initial R&R

regarding that motion, (doc. 100).   United States v. Babitchenko, 2019 WL 3402004, at *8 (D.

Idaho July 26, 2019).   However, given the Government's responsibility for 12.5 months of delay,

and absent some indication that Wright is responsible for delay, the second factor weighs in favor

of release.   Additionally, the Court concurs with the Magistrate Judge that 12.5 months of delay

is a "significant portion of the delay in this case," (doc. 148, pp. 10-11), a conclusion to which the

Government does not object.   (See generally doc. 154); see also Cos, 2006 WL 4061168, at *7

(When a defendant's pretrial detention period exceeds two years, "courts have typically upheld

detention only if the government was not responsible for any *significant* portion of the delay and

special circumstances indicated that the defendant's release would pose an extraordinary threat to

the government's regulatory interests in detention." (emphasis added)).[5]

The Government cites Briggs for the proposition that the second factor's "high burden . . .

requires 'intentional, unwarranted delay by the prosecution.' "   (Doc. 154, p. 8 (quoting 697 F.3d

at 102).)   The Briggs Court, however, did not articulate a rule that delay must be intentional *and*

unwarranted for the second factor to weigh in favor of release.   Rather, it explained that in United

States v. Hill, 462 F. App'x. 125, 127 (2d Cir. 2012), the Second Circuit "discovered 'no

intentional, unwarranted delay by the prosecution,' and determined that 'most of the delay [was]

attributable to the continuances requested by [the defendant's] twenty co-defendants and the

---

[5]   See also United States v. Musaibli, 2022 WL 1695765, at *9-10 (E.D. Mich. May 26, 2022) ("In total, the government bears sole responsibility for at least 14 months out of the 46-month ongoing delay of this trial from the initial scheduled trial date.   . . .   [T]he fact that the government bears significant culpability for causing an almost equal portion of the culpable delay versus the defense certainly prompts serious due process concerns and weighs in favor of pretrial release."); Rush, 2017 WL 6541436, at *11 ("strategic choices by the government", inter alia, resulting in "12 months or more" of delay constitutes "significant delay" in case involving a 44-month pretrial detention period); Hofstetter, 2017 WL 4079181, at *8 (finding, in case of 31 months of pretrial detention, "the Government is responsible for twenty-two and one-half (22 ½) months of delay in the trial[.] The Court finds this to be a *significant* delay." (emphasis in original)).

complexities inherent in a twenty-defendant case.' "  Briggs, 697 F.3d at 102 (quoting Hill, 462 F. App'x at 127).   The Government also cites United States v. Orena, 986 F.2d 628, 631 (2d Cir. 1993), for the proposition that "[t]here must be some reasonable basis for the court to infer that the prosecution 'intended to cause delay.' "  (Doc. 154, p. 8.)   While the Orena Court found "no reason to infer" that the Government "intended to cause delay" by bringing a joint indictment and subsequently consenting to a motion for severance, it expressly focused its analysis on a decision that would not "adopt a rule that would deter the government from seeking joint trials (or consenting to severance) as a means of economizing judicial and other resources," a concern not present in this case.   Orena, 986 F.2d at 631; see also id. (highlighting the defendant's responsibility for portions of the delay).   As one court clarified, "respect for prosecutorial discretion does not mean that the Government always should receive complete absolution for decisions whose impact on pretrial detention is foreseeable."   United States v. Bobbitt, 2013 WL 3049167, at *6 (W.D.N.Y. June 17, 2013) (citing Orena, 986 F.2d at 631).

The Government also compares the litigation delay in this case to other cases, arguing that the delay here is insufficient "to trigger government responsibility[.]"  (Doc. 154, p. 8.)   It notes that in Musaibli, 2022 WL 1695765, at *8, the Government was "responsible" for delays associated with, inter alia, its "misbegotten interlocutory appeal" on "contrived grounds" asserting "suspect misrepresentations", and that in Rodriguez, 2012 WL 6690197, at *12, the Government was responsible for delays associated with its choice to add six defendants three years after the case was filed, effectively restarting discovery.  (Doc. 154, pp. 9-10.)[6]  As discussed, however, "it is sufficient to determine whether 'even if not deserving of blame or fault, the Government

---

[6]   The Government also notes that in Gonzales Claudio, 806 F.2d at 342, the Second Circuit held that the Government was responsible for the "inexplicable" delay in disclosing the existence of videotapes.   (Doc. 154, p. 9.)

bears a responsibility for a [significant] portion of the delay.' "  Rush, 2017 WL 6541436, at *5

(quoting Gonzales Claudio, 806 F.2d at 342-43); see also Ailemen, 165 F.R.D. at 595 ("But

because the time charged here (the extra three to four months) cannot be deemed 'necessary,' we

cannot ignore it—the ultimate responsibility for such circumstances must rest with the government

rather than with the defendant." (quotations and citation omitted)).

The delay here is more analogous to the delay in Cos, where the Court held that the

Government was responsible for delay caused by its litigation strategy regarding a suppression

motion:

> [T]he United States bears responsibility for some of the delay in the resolution of
> the case.   The United States filed three motions requesting the Court reconsider its
> disposition on Cos' motion to suppress.   To a significant extent, these motions . . .
> raised new issues that the United States should have raised in its responses to the
> motion to suppress, requiring the Court to spend extra time responding to these
> arguments.
>
> The United States did not raise its argument related to the good-faith exception to
> the exclusionary rule until its second motion to reconsider, . . . and presented no
> legal argument as to how the exception applied until its third motion to reconsider[.]
> . . .   [T]hus, the United States had no excuse for not presenting such an argument
> before the Court's initial suppression decision.

2006 WL 4061168, at *16.   The Government does not explain why it could not have raised its

newly-advanced argument in its initial response,[7] and the Court agrees with the Magistrate Judge

---

[7]  The Government notes that two of the cases cited in its newly-raised argument were decided after it responded to the 66th St. Motion, and the cases "were not available" at the time.   (Doc. 154, pp. 13-14 (citing United States v. Nicholson, 24 F.4th 1341, 1353 (11th Cir. 2022); United States v. Campbell, 26 F.4th 860, 878 (11th Cir. 2022)).)   In its R&R objections, the Government cited Nicholson for the proposition that "to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system", and Campbell for the proposition that "[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs."   (Doc. 107, pp. 24-25.)   However, the Government does not argue that the standards articulated by those decisions were unavailable before their publication.   (See doc. 154, pp. 13-14); see also, e.g., United States v. Taylor, 935 F.3d 1279, 1289 (11th Cir. 2019) (citing Davis v. United States, 564 U.S. 229, 240 (2011) ("suppression not warranted [in Davis] because officer did not act 'deliberately, recklessly, or with gross negligence.' ")).

that the delay associated with the new argument is attributable to the Government.   (Doc. 148, p. 10.)

The Government also argues that "[c]ourts do not hold parties responsible for delays during collateral or direct appeals", and that "the government's actions after the initial R&R recommended suppression essentially amounted to a successful appeal of that ruling."   (Doc. 154, pp. 16-17.)   It cites, among other cases, Cos, 2006 WL 4061168, at *18, which explained that "[a]n appeal is not a delay, but the exercise of a right Congress has granted litigants."   Id.   In Cos, however, the Court also noted that when the Government appealed the district court's suppression motion disposition, the Tenth Circuit had to devote time to evaluating a jurisdictional issue given the Government's previously-described motions for reconsideration.   Id.   Accordingly, the Court attributed "the time from the Tenth Circuit's notice requiring briefing on the jurisdictional issue . . . until the Tenth Circuit's notice that it would defer ruling on the jurisdictional issue until it considered the case on the merits" to the Government.   Id.   Here, even if the Government is correct that the R&R objection process is analogous to an appeal to an appellate court under the second factor, the delay associated with the "appeal" resulted from its failure to raise an argument in its initial response to the 66th St. Motion, and that time is attributable to the Government.

The Government argues that it should not be charged with some portion of the delay related to its motion to reopen the suppression hearing after the Court remanded consideration of the 66th St. Motion because it "repeatedly represented that no additional facts were required to decide" the newly-advanced argument.   (Doc. 154, p. 20 (citing doc. 114, p. 5; doc. 141, p. 7).)   The Government contends that it moved to reopen the suppression hearing to "adduce new evidence pertinent to the entirely different factual issue of whether [the officer who obtained the 66th St. Warrant] orally supplemented his affidavit before [the issuing magistrate]."   (Id.)   The

Government has also argued, however, that the Court should consider the evidence introduced at the second suppression hearing in its disposition of the third argument.   See, e.g., doc. 141, pp. 10-11.)   Accordingly, the Court is unconvinced by the Government's argument that the delay associated with the post-remand suppression hearing does not constitute "delay" under the second factor because of the Government's position that the Court could decide the newly-advanced argument without additional factual development.[8]

Finally, the Government argues that it should not be held responsible for the delay associated with the new argument because "[i]t is permissible for a party to raise a new argument in an appeal."   (Doc. 154, pp. 17; see also id. at 17-20 (citing, e.g., Black v. Wigington, 811 F.3d 1259, 123, 1267 (11th Cir. 2016).)   This argument does not address why the Government's failure to raise an argument until its R&R objections was not a "strategic case management choice[ ] that foreseeably extend[ed] the case."   Hofstetter, 2017 WL 4079181, at *7.   This argument does not alter the Court's consideration of the Magistrate Judge's recommendation on the second factor.

Accordingly, the Court concurs with the Magistrate Judge's attribution of 12.5 months of delay to the Government under the second factor.   (Doc. 148, p. 10.)   Additionally, the undersigned concurs with the Magistrate Judge's conclusion that 12.5 months is a "significant portion of the delay" in this case, (id., p. 10-11), a conclusion to which the Government does not object.   (See, e.g., doc. 154, pp. 20-22 (arguing that "[r]emoving the 4.5 months from the

---

[8]  Even if the Magistrate Judge did not hold a provisional suppression hearing and had instead issued an R&R on the newly-advanced exclusionary argument without additional evidence, the delay associated with the 66th St. Motion's remand would have still been significant.   After the Government asserted its new argument, the undersigned directed the parties to submit additional briefing on the argument.   (Doc. 111, p. 8 (setting response and reply deadlines); see also doc. 112 (Wright's response); doc. 114 (Government's reply).)   Even if the Magistrate Judge did not hold a post-remand status conference to discuss the scope of the remand, (doc. 116), he would still have had to issue an R&R regarding the newly-advanced argument, the parties would have had an opportunity to object to the R&R, and the undersigned would have had to adopt or decline to adopt the R&R.   See 28 U.S.C. § 636(b).

magistrate's calculation leaves the government responsible for the 8-month delay", which is not "significant").)

## II. The Magistrate Judge did not err in weighing the Due Process pretrial detention factors.

The Magistrate Judge concluded that the "length of pretrial detention" and "Government responsibility for delay" factors weigh in favor of release, that the "gravity of charged crimes" and "comparison of detention and potential sentence periods" weigh in favor of continued detention, and that the "strength of the evidence upon which detention was based" factor weighs in favor of continued detention, "albeit mildly."   (Doc. 148, p. 16.)   Other than the "Government responsibility for delay" factor, discussed above, the Government does not specifically object to those conclusions.   (See doc. 154, pp. 3-7.)   Rather, it argues that the Magistrate Judge improperly weighed the factors.   (See id.)

The Government contends that the Magistrate Judge "did not cite, and the [G]overnment has not found, a single case in which a majority of the factors counseled for detention, but the court ordered release[.]"   (Doc. 154, p. 3.)[9]   The due process factors, however, are not "prec[ise]", Rush, 2017 WL 6541436, at *5, and cannot be tallied as with a scorecard.   The Government does not address the multiple courts explaining that the *relative weight* of the factors changes as the pretrial detention period increases: in cases where pretrial detention exceeds two years, "courts have typically upheld detention only if [1] the government was not responsible for any *significant* portion of the delay and [2] special circumstances indicated that the defendant's release would pose an *extraordinary threat* to the government's regulatory interests in detention."   United States

---

[9]   The Government's inability to identify a case "in which a majority of the factors counseled for detention, but the court ordered release", (doc. 154, p. 3), is likely attributable to the fact that the fifth factor discussed by the Magistrate Judge, "a comparison between the length of the likely sentence the defendant faces and the length of pretrial detention", is only applied by "some courts."   (Doc. 148, p. 4 (quoting Cos, 2007 WL 1302580, at *3).).

v. Omar, 157 F. Supp. 3d 707, 717 (M.D. Tenn. 2016) (emphasis added) (quoting Cos, 2006 WL 4061168, at *6-7).   As one court explained, courts should not "permit continued detention" when "neither of these contingencies are met[.]"   Hofstetter, 2017 WL 4079181, at *10; see also Rush, 2017 WL 6541436, at *12 ("Because . . . the government was responsible for significant delay, due process requires that Timothy Rush be released unless special circumstances indicate that his release would pose an extraordinary threat to the government's regulatory interests in pretrial detention.").   Given the Magistrate Judge's finding that the Government is responsible for a significant portion of the delay in this case, (doc. 148, pp. 7-8), and that Wright's release would not pose an "extraordinary threat" to the Government's interests in bringing him to trial and preventing danger to the community, (id., p. 14), the Court is unconvinced by the Government's factor-tallying argument.

The Government also objects to the Magistrate Judge's weighing of the due process factors by citing over one page of cases involving pretrial detention periods longer than Wright's, where the length of detention alone was not dispositive.   (See doc. 154, pp. 5-7 ("[L]egions of federal courts have concluded that detention periods longer than Wright's 36 months do not violate due process.").)   The Magistrate Judge, however, recognized that pretrial detention length is not dispositive, and did not base his recommendation on that factor alone.   (Doc. 148, p. 5 (citing El-Hage, 213 F.3d at 79).)   Further, the Government's string citation demonstrates that the Magistrate Judge may have been too generous to the Government in concluding that the "Government's regulatory interest" factor (i.e., the evidence of risk of flight and dangerousness) weighs even "mildly" against Wright's release.   (Doc. 148, p. 15.)   Several of the cited cases indicate that when a defendant's charges trigger a rebuttable presumption that he poses both a significant risk of flight and a substantial threat to the safety of the community under 18 U.S.C. §

3142(e)(3), the "Government's regulatory interest" factor weighs more heavily against release. See, e.g., United States v. Rounds, 619 F. App'x 40, 41 (2d Cir. 2015); United States v. Evans, 2015 WL 13842746, at *5 (W.D.N.Y. July 9, 2015); United States v. Speed, 2013 WL 6531950, at *4 (W.D.N.Y. Dec. 12, 2013).  *Every case* in the Government's string citation involves a defendant whose charges gave rise to a rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3). [10]  This Congressionally-recognized heightened detention interest is not present here, since Wright's charges do not trigger the statutory presumption.  (Compare doc. 2, p. 1-2 (charging Wright with possession of an unregistered destructive device under 26 U.S.C. § 5861(d), and use of fire or explosive to commit any felony offense under 18 U.S.C. § 844(h)), with 18 U.S.C. § 3142(e)(3) (listing rebuttable presumption charges).)  Additionally, the Government's regulatory interest is even lower where, as here, Wright's detention is based solely on risk of flight, as opposed to danger to the community.  See Orena, 986 F.2d at 631 ("[T]he constitutional limits on a detention based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight.  In the former case, release risks injury to others, while in the latter case, release risks only the loss of a conviction.").

The Government also discusses two cases in which it argues the court "broke the tie" of evenly-balanced factors by ruling for continued detention: Musaibli, 2022 WL 1695765, at *11,

---

[10]  See Rounds, 619 F. App'x at 41; United States v. Schulte, 2022 WL 1316210, at *2 (2d Cir. May 3, 2022); United States v. Vondette, 5 F. App'x 73, 75 (2d Cir. 2001); United States v. Tawfik, 852 F. App'x 965, 966 (6th Cir. 2021); Nero, 854 F. App'x at 16; Speed, 2013 WL 6531950, at *4; United States v. Torres, 2014 WL 6885915, at *4 (W.D.N.Y. Dec. 8, 2014); Rodriguez, 2012 WL 6690197, at *2, 13; United States v. Swinton, 251 F. Supp. 3d 544, 547 (W.D.N.Y. 2017); United States v. Brazier, 2015 WL 13842747, at *2 (W.D.N.Y. July 20, 2015); United States v. Bryant, 2021 WL 3855294, at *1 (W.D.N.Y. Aug. 30, 2021) ("Notably, both defendants are charged . . . with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2, which has a 20-year mandatory minimum term of imprisonment and a maximum of life."); Evans, 2015 WL 13842746, at *5; United States v. Scott, 2015 WL 13842749, at *2 (W.D.N.Y. Sept. 15, 2015); Musaibli, 2022 WL 1695765, at *10; United States v. Gonzales, 995 F. Supp. 1299, 1302 (D.N.M. 1998); United States v. Parrish, 2021 WL 4046741, at *2 (N.D. Tex. Mar. 26, 2021).

and Bobbitt, 2013 WL 3049167, at *7, and one case where the court "reluctantly" ordered release when the "factors balanced evenly": Rodriguez, 2012 WL 6690197, at *10.   In all three of those cases, however, the defendants' pretrial detention periods were over two years, and either the "Government responsibility for delay" factor did not weigh in favor of release, or the Government had a significant interest in continued detention based on a significant risk of flight and a "severe risk" of danger to the community.[11]   Additionally, the Government characterizes Rodriguez as a case where "pretrial detention was 50 months", and that Wright's pretrial detention period "is not nearly so long[.]"   (Doc. 154, pp. 4-5.)   The pretrial detention period in Rodriguez, however, is closer to Wright's than the Government suggests: although the Rodriguez Court estimated that the defendant would be detained "at least 50 months" by the time of the trial, he had been detained only "33 months as of [the] writing" of the court's order granting release.   2012 WL 6690197, at *10.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."   United States v. Salerno, 481 U.S. 739, 755 (1987).   The Court recognizes the gravity of the charges against Wright and the risks associated with his release; however, "the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks."   Gonzales Claudio, 806 F.2d at 343.   "The Court need not decide the exact day that [Wright's] pretrial detention turned punitive in nature, other than to declare that it has occurred by now[.]"   Babichenko, 2019 WL 3558484, at *12.   Accordingly, Wright's

---

[11]   See Musaibli, 2022 WL 1695765, at *11 (finding that defendant's release would pose a "severe risk" to the community given his terrorism-related charges and background as a "military-trained terrorist", and that continued detention was justified based on "uncontroverted evidence that he previously exhibited great determination in traveling internationally and crossing borders illegally to arrive in a remote region of the Middle East where he enlisted with ISIS military forces"); Bobbitt, 2013 WL 3049167, at *6-7 (finding that "Government's responsibility for delay" factor "favors neither party"); Rodriguez, 2012 WL 6690197, at *13 (finding that the "Government's responsibility for delay" factor "is neutral and does not favor either party").

Release Motion is **GRANTED**.   (Doc. 124.)

## CONCLUSION

For the foregoing reasons, the Government's objections to the Magistrate Judge's R&R, (doc. 154), are **OVERRULED**, and Wright's Motion for Release on Due Process Grounds is **GRANTED**.   (Doc. 124.)   The Magistrate Judge's R&R provides that, if the Court adopts the R&R, Wright's release will be stayed for 14 days following the Court's adoption to afford the Government an opportunity to appeal the disposition.   (Doc. 148, p. 17 (noting that Wright's release will remain stayed during the pendency of an appeal).)   Given the contingent nature of the R&R's stay instruction, the Court construes it as a recommendation and **DECLINES** to **ADOPT** it.   (Doc. 148, in part.)   Instead, Wright's release is **STAYED** pending the imposition of bail conditions.   The imposition of appropriate conditions of release is **REFERRED** to the Magistrate Judge for further proceedings.   The United States Probation Office is **DIRECTED** to provide the Court a report containing bail conditions it deems appropriate within 14 days from the date of this Order.   Accordingly, the Court **ADOPTS** the R&R, in part, and **DECLINES** to **ADOPT** it, in part.   (Doc. 148.)

**SO ORDERED**, this 9th day of December, 2022.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA