**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

UNITED STATES OF AMERICA,

    v.

CRIMINAL ACTION NO.: 4:19-cr-149

BARRY WRIGHT,

      Defendant.

## <u>O R D E R</u>

Before the Court is the Magistrate Judge's May 25, 2023 Report and Recommendation ("R&R") recommending that the Court deny Defendant Barry Wright's six pending motions to suppress evidence obtained pursuant to search warrants, (docs. 27, 29, 30, 32, 33 & 34).[1] (Doc. 225, p. 83.)  Wright objects to those recommendations.  (Doc. 238.)  For the following reasons, Wright's objections are **OVERRULED**, the R&R is **ADOPTED** as the opinion of the Court, and all of Wright's pending suppression motions are **DENIED**.  (Docs. 27, 29, 30, 32, 33 & 34.)

## BACKGROUND

The affidavits supporting the challenged warrants assert that Wright's ex-wife's vehicle "suddenly exploded" while she was driving.  (<u>See, e.g.</u>, doc. 27-2, p. 4.)[2]  Investigators

---

[1]  Wright filed briefs supplementing 5 of the pending suppression motions.  (Doc. 182 (supplementing doc. 29); doc. 183 (supplementing doc. 27); doc. 184 (supplementing doc. 30); doc. 190 (supplementing doc. 32); doc. 191 (supplementing doc. 34).)   The Magistrate Judge considered the supplementary briefs in his May 25, 2023 R&R.   (<u>See</u> doc. 225, pp. 4-5.)

[2]  Unless otherwise noted, the Court will cite the affidavit supporting the warrant challenged in Wright's suppression motion at docket entry 27 in the "Background" section of this Order.

subsequently found an incendiary device under the driver's seat consisting of circuit boards, switches, wires, batteries, plastic bottles, accelerant, and cardboard cylinders.  (Id., p. 5.)  The ex-wife's attorney "expressed concern" that Wright "may possibly be involved with the incident . . . [based on] the tumultuous nature of their divorce" in which the ex-wife was awarded substantial assets.  (Id.)  A coworker stated that the ex-wife "had expressed concern regarding a recent gas leak in her home" in which she believed that Wright "may possibly be involved."  (Id.)  Further, the affiant asserts that Wright has the "intelligence, knowledge and specific skill-set" required to construct an incendiary device based on his experience as an "electrical engineer[ ] employed by" an electrical equipment supplier which "specializ[es] in switchgear, transformer, and engineering services," and that he is a "boat mechanic/repairman."  (Id.)  The Magistrate Judge held a hearing on February 16, 2023 regarding the six pending suppression motions, (doc. 188 (Minute Entry)), and recommended that the Court deny all six.  (Doc. 225, p. 83.)  Wright objects to those recommendations.  (Doc. 238.)

## ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and the judicially-created remedy known as the "exclusionary rule" acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search. United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002).  In some cases, evidence seized pursuant to a search warrant that is invalid because it is "not supported by probable cause" is suppressed, or excluded, from the trial of a case.  United States v. Welch, 2011 WL 3911113, at *4 (S.D. Ga. Aug. 18, 2011); see generally United States v. Leon, 468 U.S. 897 (1984) (discussing the origin and scope of the exclusionary rule).  In evaluating whether a search warrant was issued

based on probable cause, "[a] reviewing court's task is not to make a de novo finding of probable cause but rather to decide whether the issuing magistrate—whose assessment of the affidavit's factual presentation is entitled to 'great deference'—had a 'substantial basis' for finding probable cause."   United States v. Rangel, 2018 WL 817845, at *6 (S.D. Ga. Jan. 18, 2018) (quoting Illinois v. Gates, 462 U.S. 213, 236, 238-39 (1983)); see also United States v. Giddens, 2019 WL 6971496, at *1 (S.D. Ga. Dec. 18, 2019).   Moreover, "[t]he Supreme Court has recognized that 'reasonable minds frequently may differ' on whether an affidavit establishes probable cause, in order to accommodate the preference for warrants and to avoid perennial reevaluations of those determinations, the original determination is entitled to 'great deference.' "   Giddens, 2019 WL 6971496, at *1 (quoting Leon, 468 U.S. at 914) (alterations and emphasis omitted).

Even if a substantial basis for the issuing magistrate's probable-cause finding exists, a warrant that fails to sufficiently particularize the place or things to be seized is unconstitutionally overbroad and the resulting general search is unconstitutional.   United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000); United States v. Mitchell, 503 F. App'x 751, 754 (11th Cir. 2013). A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things to be seized.   United States v. Bradley, 644 F.3d 1213, 1259 (11th Cir. 2011). "It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit."   United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982) (citations omitted).

Even if a court finds that the issuing magistrate did not have a substantial basis for finding probable cause, evidence discovered pursuant to a deficient warrant may still be admissible under

the "good faith" exception to the exclusionary rule.  Leon, 468 U.S. at 913. "The good-faith

exception applies in all but four sets of circumstances."  United States v. Lara, 588 F. App'x 935,

938 (11th Cir. 2014) (citing Leon, 468 U.S. at 923).   It does not apply when: "(1) the magistrate

judge was misled by information the affiant knew was false or would have known was false except

for his reckless disregard of the truth; (2) the magistrate judge wholly abandoned his judicial role;

(3) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence

entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a

warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things

to be seized–that the executing officers cannot reasonably presume it to be valid."  United States

v. Hill, 2014 WL 5410214, at *7 (S.D. Ga. Oct. 23, 2014) (citing United States v. Robinson, 336

F.3d 1293, 1296 (11th Cir. 2003)).

Finally, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate

that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the

price paid by the justice system."  Herring v. United States, 555 U.S. 135, 144 (2009). "When the

police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment

rights, the benefits of exclusion outweigh the costs.  [Cit.]  But when the police reasonably act

with a good-faith belief that their conduct is lawful, or when their conduct involves mere

negligence, the deterrent value of suppression is diminished."  United States v. Brito-Arroyo,

2021 WL 3661200, at *4 (11th Cir. Aug. 18, 2021) (internal quotations and citations omitted).

I.    **Wright's untimely Franks challenges are waived, and his suppression motions at
      docket entries 27, 29 and 30 are denied.**

As the Magistrate Judge explained, Wright's earlier suppression motion at docket entry 28

sought to exclude all evidence obtained pursuant to a warrant issued on July 3, 2019 for the search

of Wright's residence at 205 East 66th Street in Savannah (the "First 66th Street Warrant").

(Doc. 225, pp. 5-6.)   Wright argued that the warrant issued on insufficient probable cause, and that the "good faith exception" to the exclusionary rule does not save the evidence obtained pursuant to that warrant from suppression.   (See doc. 28, pp. 4, 9.)   The Court denied that motion. (Doc. 157, p. 9.)   In at least five of the six currently-pending suppression motions, Wright argues that the Court must suppress evidence obtained pursuant to various warrants because their affidavits are based on information obtained pursuant to the execution of the First 66th Street Warrant.   (See doc. 225, p. 5.)   The Magistrate Judge recommended that the Court reject these "fruit-of-the-poisonous-tree" arguments given the denial of the suppression motion challenging the First 66th Street Warrant.   (Id., pp. 5-6.)

Although Wright purports to "object[ ] to the [R&R's] conclusion that his fruit-of-the-poisonous-tree-argument fails," (doc. 238, p. 2 (capitalization and punctuation altered)), he does not point to any flaw in the Magistrate Judge's reasoning.   Rather, he argues for the first time that the Court must suppress evidence obtained pursuant to various warrants, including the warrant challenged by the suppression motion at docket entry 28, under Franks v. Delaware, 438 U.S. 154 (1978).   (See doc. 238, pp. 2-7; see also id., p. 4 (Wright acknowledges that he "has not previously submitted his [Franks] argument[.]").)[3]   "Under Franks, if an affidavit submitted to a judicial officer in support of a request for a search warrant contains a false statement made knowingly and intentionally, or with reckless disregard for the truth, and if, stripped of that false statement, the affidavit does not establish probable cause, the search warrant must be voided."   O'Ferrell v. United States, 253 F.3d 1257, 1267 (11th Cir. 2001) (quoting Franks, 438 U.S. at 155-56) (internal quotation marks and alternations omitted).   Wright argues that "despite suppression being

---

[3]   Although Wright does not cite Franks in his objections, he cites cases applying the Franks standard. (See, e.g., doc. 238, p. 6 (quoting United States v. Cronan, 937 F.2d 163, 165 (5th Cir. 1991).)   Further, as discussed below, his newly-raised grounds are consistent with Franks challenges.

previously denied," the affidavit supporting the First 66th Street Warrant was "flawed by misleading averments[.]"   (Doc. 238, p. 2.)

Specifically, he challenges the affidavit's assertion that components of the incendiary device tested positive for chemicals commonly found in boat flares, and that Wright's ex-wife's coworker described Wright as a "boat mechanic/repairman."   (Doc. 238, p. 2 (discussing doc. 28-2, pp. 5-6).)   Wright explains:

> More than 2 years after [he] filed his motion to suppress [evidence obtained pursuant to the 66th Street Warrant], and more than a year after the hearing on that motion, [cit.], in August 2022, [his] counsel . . . received a discovery package[.] . . . [Cit.]   Included in that package was a lab report from [an] ATF chemist[, which] shows no evidence of any substance related to boat flares was found. . . . In view of the lab report, with no connection to . . . Wright to the offense by virtue of the mention of a witness that he was a "boat mechanic/repairman" coupled with the claim that the device's cardboard cylinders "tested positive" for substances found in boat flares, the warrant affidavit failed to establish any nexus between . . . Wright, his residence, and the offense.

(Id., pp. 3-4 (citations omitted) (formatting altered).)   Wright broadly contends that, based on this deficiency, "the fruit of the poisonous tree doctrine should bar the use of any evidence based upon [the search authorized by the First 66th Street Warrant] and should be suppressed in any trial . . . ." (Id., p. 7.)   He also argues that the officer's purportedly misleading statements justify granting his currently-pending suppression motions at docket entries 27, 29, 30, 32 and 33. (See doc. 238, pp. 7-13; see also id., pp. 13-22 (Wright does not raise a specific Franks challenge in his objection to the recommended denial of the pending suppression motion at docket entry 34).)

The Court "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge", Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009), and it would be on firm ground in declining to address Wright's newly-asserted arguments.   See, e.g., United States v. Light, 2021 WL 1187260, at *2 (D. Minn. Mar. 30, 2021) ("Light raises new arguments regarding allegedly false statements in search-warrant applications

[in his R&R objections], and requests three corresponding <u>Franks</u> hearings.   [Cit.]   Because Light did not raise these arguments before the Magistrate Judge, they are waived." (docket citation omitted)).   The Court, however, will address Wright's new arguments because it previously addressed arguments made by the Government for the first time in R&R objections in this case. (<u>See</u> doc. 157, p. 5.)   The Court notes, however, that the parties' practice of raising wholly new arguments in R&R objections has significantly delayed this case.   (<u>See, e.g.</u>, doc. 148, pp. 8-10 (Magistrate Judge's summary of the Government's litigation strategy regarding Wright's suppression motion at docket entry 28).)   The Court has previously explained to the parties that "the magistrate judge system was created to help alleviate the workload of the district judges," and "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge."   (Doc. 111, p. 8 (quoting <u>Williams</u>, 557 F.3d at 1291-92 (quotations and citation omitted)).)   Accordingly, the parties are warned that they "must take before the magistrate [judge], not only their 'best shot' but all of their shots."   <u>Ridenour v. Boehringer Ingelheim Pharms., Inc.</u>, 679 F.3d 1062, 1067 (8th Cir. 2012) (quotations and citation omitted).   The parties should, therefore, not expect further indulgence regarding arguments not presented to the Magistrate Judge.

Although Wright's <u>Franks</u> challenges are not waived because they are raised for the first time in R&R objections, they are waived because they are untimely.   "The district court has the authority to establish a schedule of deadlines for defendants to file motions and requests prior to trial under Rule 12(c) of the Federal Rules of Criminal Procedure."   <u>United States v. Smith</u>, 918 F.2d 1501, 1509 (11th Cir. 1990).   "If a party does not meet the deadline for making a [motion

for suppression of evidence], the motion is untimely.   But a court may consider the . . . request if the party shows good cause."   Fed. R. Crim. P. 12(c)(3).

Wright raises his <u>Franks</u> challenges nearly three months after his April 3, 2023 pretrial motion deadline.   (<u>See</u> doc. 201, p. 1; doc. 208, p. 2; doc. 238 (objection to R&R filed June 28, 2023).)   His explanation for the untimeliness is: "[u]nfortunately, defense counsel did not notice that the scientific names of the substances found by [the ATF agent] differed from those alleged in the warrant affidavit until well after the suppression motion had been denied by the Court and after the Report and Recommendation [presumably, the May 25, 2023 R&R] was filed."   (Doc. 238, p. 4.)   Wright's counsel represents, however, that they had access to the information necessary to raise the challenges at least seven months before the pretrial motion deadline, at least five months before the Court held a hearing on his currently-pending suppression motions, and at least three months before the Court denied his suppression motion at docket entry 28.   (<u>See</u> doc. 238, p. 3 (Wright received the relevant discovery in "August 2022"); doc. 157, pp. 9-10 (Wright's motion at docket entry 28 was denied on December 9, 2022); doc. 188 (Minute Entry for February 16, 2023 hearing).)   Although the Court recognizes the gravity of Wright's assertions that an affiant made misleading representations to the issuing magistrate, the Eleventh Circuit has clarified that "no good cause exists to excuse an untimely suppression motion when 'the defendant had all the information necessary to bring [the motion] before the date set for pretrial motions, but failed to file it by that date.'"   <u>United States v. Miller</u>, 2023 WL 155212, at *2 (11th Cir. 2023) (quoting <u>United States v. Curbelo</u>, 726 F.3d 1260, 1266-67 (11th Cir. 2013)).   Absent any further explanation for Wright's failure to timely assert the <u>Franks</u> challenges, they are waived.   <u>See also</u> <u>United States v. Vazquez</u>, 2010 WL 11565311, at *4 (N.D. Ga. Jan. 12, 2010) ("[I]n order to raise a <u>Franks</u> challenge, the defendant must comply with the procedural rules. . . . By failing to file a

motion for a <u>Franks</u> hearing within the deadline set by the Court, defendant waived his right to assert it.").[4]   To the extent Wright's <u>Franks</u> challenges are "objections" to the R&R, they are **OVERRULED**.

Wright's objections to the Magistrate Judge's recommended denial of his suppression motions at docket entries 27, 29 and 30 are wholly premised on the untimely <u>Franks</u> challenges. (<u>See</u> doc. 238, pp. 7-10.)   Accordingly, since the Court agrees with the Magistrate Judge's otherwise unobjected-to reasoning regarding these three motions, (<u>see</u> doc. 225, pp. 10-26), the R&R is **ADOPTED, in part**, as the opinion of the Court.   Wright's suppression motions at docket entries 27, 29 and 30 are **DENIED**.

## II.   <u>Wright's suppression motion at docket entry 32 is denied.</u>

The warrant challenged at docket entry 32 authorized the forensic examination of fifteen electronic devices, including several cell phones, thumb drives, a laptop, and an iPad, for specific categories of information.   (Doc. 32; doc. 32-1 (warrant); <u>see also</u> doc. 190 (Wright's supplementary brief).)   The warrant divides the information categories into three paragraphs, including 14 subparagraphs under paragraph 1, and 2 subparagraphs under paragraph 3.   (Doc. 32-1, pp. 7-9.)   Wright argues that the Court must suppress evidence obtained pursuant to the warrant because the descriptions of information in all three paragraphs and sixteen subparagraphs

---

[4]   As discussed, Wright broadly argues that "the fruit of the poisonous tree doctrine should bar the use of any evidence based upon [the search authorized by the First 66th Street Warrant] and should be suppressed in any trial[.]"   (Doc. 238, pp. 6-7.)   This assertion could be construed as a request for the Court to revisit its denial of his suppression motion at docket entry 28.   Wright, however, has not moved for reconsideration of that denial, nor has he attempted to show that this "extraordinary remedy to be employed sparingly" is justified.   <u>Burger King Corp. v. Ashland Equities, Inc.</u>, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002); <u>see also</u> <u>United States v. Del Villar</u>, 2021 WL 5180048, at *2 (S.D.N.Y. Nov. 7, 2021) (Because the defendant did not raise a <u>Franks</u> challenge "in support of his motion to suppress . . . , this is a new argument that cannot be raised on a motion for reconsideration.").

are insufficiently particularized, and because the "good faith exception" to the exclusionary rule does not save the evidence from suppression.   (See doc. 225, pp. 27-41.)

The Magistrate Judge concluded that the following categories are sufficiently particularized: (1) the introductory portion of paragraph 1; (2) paragraph 1, subparagraphs a, b, c, d, and m; and (3) paragraph 3, including its two subparagraphs.   (See doc. 225, pp. 31-40.)   He concluded, however, that paragraph 1, subparagraphs e, f, g, h, i, j, k, and l, n, are insufficiently particularized.   (See id.)[5]   Despite these deficiencies, he explained that suppression based on the insufficiently particularized categories would be inappropriate under the good faith exception. (See id., pp. 40-41.)

Wright only objects to the Magistrate Judge's conclusion that the good faith exception saves the evidence from suppression despite the deficiencies in paragraph 1, subsections f, g, h, i, j, k & l.   (See doc. 238, pp. 10-11.)[6]   The Court agrees with the Magistrate Judge's unobjected-

---

[5]   Paragraph 2 incorporates other portions of the warrant by reference: "Evidence of user attribution showing who used or owned the Devices at the time *the things described in this warrant* were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history."  (Doc. 32-1, p. 8 (emphasis added).)   Accordingly, the Magistrate Judge concluded that to the extent paragraph 2 incorporates a category of information that is sufficiently particularized, paragraph 2 is sufficiently particularized.  (Doc. 225, p. 38.)   Conversely, "to the extent an item is not sufficiently particularized . . . paragraph 2 is not sufficiently particularized."  (Id., pp. 38-39.)

[6]   Wright purports to object to the Magistrate Judge's conclusions regarding paragraph 1, subparagraph n, (doc. 238, p. 10); however, he does not provide any argument regarding subparagraph n in the brief portion of his objections addressing the suppression motion at docket entry 32.   (See id., pp. 10-11.)   Additionally, Wright challenges the Magistrate Judge's conclusions regarding paragraph 1, subparagraphs h, i, j, k & l, which vaguely reference an unspecified "fire."   (See id., p. 22; see also doc. 32-2, pp. 6-7.)   The Magistrate Judge included subparagraphs g and h in his discussion of the unspecified "fire", (see doc. 224, pp. 26-27), and Wright does not include those subparagraphs in his objections.  (Doc. 238, pp. 10-11.) Despite the confusion created by Wright's organization of his objections, the Court presumes that Wright intended to object to the recommendations regarding subparagraphs f, g, h, i, j, k & l, since the entirety of his objections regarding doc. 32 relates to the warrant's "fire" reference.   (See doc. 238, pp. 10-11.)

Wright also objects to the Magistrate Judge's conclusion regarding "paragraph 2", (doc. 238, p. 10); however, the Court cannot identify specific argument in his objections regarding paragraph 2.   (See id., pp. 10-11.)   Accordingly, the Court assumes that Wright argues that to the extent paragraph 2 incorporates paragraph 1, subparagraphs f, g, h, i, j, k & l, it is insufficiently particularized.

to recommendations regarding the suppression motion at docket entry 32 and **ADOPTS** them as

its opinion.   The Court will address Wright's limited objection regarding the application of the

good faith exception to paragraph 1, subsections f, g, h, i, j, k & l.

As discussed, the following challenged subparagraphs reference a "fire" not specified in

the warrant:

- f. Any information related to the research of items used in the fire on July 2, 2019.
- g. Any information related to the purchase of items used in the fire on July 2, 2019.
- h. Any information related to the building or manufacture of the items used in the fire on July 2, 2019.
- i. Any information related to the transportation of the items used in the fire on July 2, 2019.
- j. Any information related to the installation of the items used in the fire on July 2, 2019.
- k. Any information related to the communication with the items used in the fire of July 2, 2019.
- l. Any communication related to the fire on July 2, 2019.

(See doc. 225, pp. 36-37 (quoting doc. 190, pp. 5-6).)   The Magistrate Judge "agree[d] with

Wright that [w]ithout describing what is meant by either 'the fire on July 2, 2019,' or, [e.g.] 'items

used in the fire,' [the] description[s] contain[ ] a . . . lack of particularity."   (Id. (quoting doc. 190,

p. 5).)[7]

Despite this deficiency, the Magistrate Judge concluded that suppression would be

inappropriate under the good faith exception.   (Doc. 225, pp. 40-41.)   He reasoned that the list of

items is not as "glaring[ly] deficien[t]" as the warrant at issue in Groh v. Ramirez, 540 U.S. 551

(2004), where the Supreme Court held that the good faith exception did not apply when the warrant

listed the "items to be seized" as a "single dwelling residence . . . blue in color."   (Id., p. 40

(quoting Groh, 540 U.S. at 558, 564).)   He also noted that the issuing magistrate signed the

---

[7]   Although the affidavit supporting the warrant explains that Wright's ex-wife's car "suddenly exploded"
on July 2, 2019, (see doc. 32-2, pp. 13-14), the Magistrate Judge concluded that the warrant did not
incorporate that affidavit by reference or physical attachment, and he limited his particularity analysis to
the four corners of the warrant.   (See doc. 225, pp. 27-30.)   The Court agrees with that conclusion, to
which no party has objected.   (See generally docket.)

affidavit, which "demonstrates that one of the core purposes of the Fourth Amendment, preventing a 'general' search by having a magistrate restrict the scope of the search, was achieved here."   (Id., pp. 40-41 (quoting United States v. Allen, 625 F.3d 830, 839 (5th Cir. 2010).)   Finally, the Magistrate Judge noted that Wright did not address whether officers' conduct was "deliberate enough" for suppression to "yield meaningful deterrence."   (Id., p. 41 (quoting United States v. Campbell, 26 F.4th 860, 887 (11th Cir. 2023).)

Wright primarily objects to the Magistrate Judge's distinction of the challenged categories from the "glaring[ly] deficien[t]" warrant in Groh.   (See doc. 238, pp. 10-11; see also Groh, 540 U.S. at 558).)   Wright asserts that "[t]he linchpin ungirding the issuance of the warrant here is the 'fire on July 2, 2019' but the warrant doesn't describe what is meant by that phrase. . . . A warrant that is so facially deficient as to particularize the place to be searched, or the things to be seized, cannot be presumed to be valid, taking this warrant outside of the protections of Leon."   (Doc. 238, p. 11 (citing Groh, 540 U.S. at 558).)   In Groh, however, the warrant "failed to identify any of the items that petitioner intended to seize. . . . [It] did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items.   Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. . . . [T]he warrant did not describe the items to be seized at all."   540 U.S at 554, 558 (emphasis in original).   Here, although the warrant's reference to a "fire on July 2, 2019" is vague, the warrant still lists specific information associated with the fire on that date.   (See doc. 32-1, pp. 7-8.)   Additionally, Wright does not address the Magistrate Judge's discussion of the issuing magistrate's signature appearing on the affidavit, or Wright's failure to argue whether officers' conduct was sufficiently deliberate to warrant suppression.   (See doc. 225, pp. 40-41; doc. 238, pp. 10-11.)   Accordingly, the Court **OVERRULES** Wright's objections and **ADOPTS, in part**, the Magistrate Judge's

recommendations regarding the suppression motion at docket entry 32 as its opinion.   The

suppression motion is **DENIED**.   (Doc. 32.)

### III.   Wright's suppression motion at docket entry 33 is denied.

Wright moves to suppress all evidence obtained pursuant to a warrant authorizing the

search of "records and information associated with the cellular . . . number [ending in 2822] . . .

that are stored at premises controlled by Verizon."   (Doc. 33-1, p. 4 (Warrant); doc. 33.)   The

Magistrate Judge summarized the affidavit supporting the warrant application as follows:

> The affidavit supporting the warrant explains that Wright's ex-wife's car caught
> fire at approximately 7:41 PM on July 2, 2019, [cit.], and that a phone number
> ending in 4976 "called into" the SIM card in the incendiary device to trigger the
> device.   [Cit.]   It explains that based on, inter alia, interviews, Verizon records,
> EEU alarm system records, and surveillance footage from a business near EEU,
> [cit.], the affiant believes that Wright entered EEU on the day of the explosion at
> 5:44 PM, left the 2822 cellular phone at EEU, and left EEU at approximately 6:03
> PM.   [Cit.]   Approximately 1 minute after the 7:41 PM fire, Wright returned to
> the EEU premises; he then left the premises "a few minutes later" with the 2822
> cellular phone.   [Cit.]
>
> The affiant states that the incendiary device was "triggered remotely with either a
> phone call or a message sent over a wireless network.   Thus, any device capable
> of making phone calls or sending messages, such as wireless telephones and tablets
> that use a wireless network could have triggered the circuit remotely."   [Cit.]   He
> further asserts that, based on his training and experience, it is possible that [Wright]
> used a device to connect remotely to the Internet to activate the [incendiary device]
> using EEU's modem and router."   [Cit.]   Verizon records show that Wright sent
> his girlfriend a text message indicating that he would be home by 6:00 PM or 7:00
> PM.   [Cit.]   Between 6:31 PM and 7:44 PM, Wright's girlfriend called him eight
> times and text messaged him twice, indicating that she was "concerned and worried
> about him."   [Cit.]
>
> The affidavit also states that law enforcement identified a PDF document on a
> computer at EEU listing, *inter alia*, Wright's financial accounts and passwords.
> [Cit.]   One of the phrases on the document was "Cates phone lookout"; the
> affidavit explains that Lookout is a mobile security application available for cell
> phones which allows users to locate mobile devices on a map.   [Cit.]   The ex-wife
> told investigators that although she was not familiar with the Lookout application,
> Wright commonly installed applications on her phone when they were married.
> [Cit.]   The affidavit states that law enforcement located an AT&T cell phone in the
> ex-wife's car.   [Cit.]   The affiant states that he "believe[s] that this . . . cell phone

> was placed in the [vehicle] to be a tracking device, which allowed . . . Wright to log in remotely and track the [phone] . . . to know the location of the [vehicle] when the device was remotely detonated."   [Cit.]

(Doc. 225, pp. 42-44 (citations omitted) (formatting altered).)   The Government argued that the affidavit established probable cause that "the Verizon data would contain two categories of information related to the alleged crimes: evidence that the phone number ending in 2822 was involved in (1) the triggering of the incendiary device, and (2) the tracking Wright's ex-wife's movements on the day of the explosion."   (Id., p. 45.)   The Magistrate Judge disagreed, concluding that "[t]he affidavit does not articulate the 2822 phone's possible involvement in either of those functions."   (Id.)   Despite this deficiency, he recommended that the Court deny the suppression motion because "[a]lthough a more explicit connection between the alleged crimes and the 2822 number would strengthen the affidavit's articulation of probable cause, the affidavit's discussion of the phone's movements and the nature of the crime provided the issuing magistrate at least a substantial basis for finding probable cause."   (Id., p. 46.)   He also found that even if the affidavit did not establish a substantial basis for finding probable cause, suppression would be inappropriate under the good faith exception.   (Id., pp. 47-48.)

Wright's objection to the Magistrate Judge's "substantial basis for finding probable cause" conclusion is as follows:

> Despite making accurate findings about the warrant's defects, the Report and Recommendation erroneously concluded that the issuing magistrate had a substantial basis for a finding of probable cause.   [Cit.]

> The Report and Recommendation carefully sets out the facts in the affidavit that fail to support a finding of probable cause, [cit.], and correctly concludes that those facts don't establish probable cause. [Cit.]   It follows, therefore, that the Report and Recommendation's conclusion concerning the substantial basis for finding probable cause is in error.

(Doc. 238, p. 12 (citations omitted).)   When an affidavit fails to establish sufficient probable

cause, it does not necessarily "follow[ ]" that the affidavit fails to establish a *substantial basis* for finding probable cause.   See Rangel, 2018 WL 817845, at *6 (quoting Gates, 462 U.S. at 236, 238-39) ("A reviewing court's task is not to make a *de novo* finding of probable cause but rather to decide whether the issuing magistrate—whose assessment of the affidavit's factual presentation is entitled to 'great deference'—had a 'substantial basis' for finding probable cause.").   Absent any explanation why the Magistrate Judge erred in his "substantial basis" conclusion, Wright's objections on this point are **OVERRULED**.

Wright's objection to the Magistrate Judge's "good faith" exception conclusion is similarly conclusory: "[t]he warrant in this case, which failed to establish probable cause to search, is void from its inception and is no warrant at all."   (Doc. 238, pp. 12-13.)   The good faith exception is not inapplicable merely because the affidavit supporting the warrant failed to establish sufficient probable cause; in fact, the application of the exception seems to assume that the warrant in question lacked a probable-cause basis.   Accordingly, Wright's objection on this ground is **OVERRULED**, the R&R is **ADOPTED, in part**, as the opinion of the Court, and his suppression motion at docket entry 33 is **DENIED**.

### IV.   Wright's suppression motion at docket entry 34 is denied.

Wright's motion at docket entry 34 initially requested suppression of evidence obtained pursuant to 16 warrants authorizing the seizure of "cell site location data and other private information requested from Google, Verizon and other providers[.]"   (Doc. 34, pp. 3-4.)   Wright withdrew his challenges to several of those warrants.   (See doc. 188 (Minute Entry for February 16, 2023 hearing lists withdrawn challenges); doc. 191, pp. 1-2 (listing withdrawn and remaining challenges); see also doc. 225, pp. 48-49 (Magistrate Judge's summary of remaining challenges).) The Magistrate Judge recommended that the Court deny Wright's motion as to the remaining

challenged warrants, which are designated (a), (b), (d), (e), (f), (k), (m), and (n).  (See doc. 225, pp. 48-80.)  Wright only objects to the Magistrate Judge's recommendations regarding (1) the warrant designated (a), which the Magistrate Judge called the "Geofence Warrant"; and (2) the warrants designated (b), (d), (e), and (f), which he called the "Tower Dump Warrants."  (See doc. 238, pp. 13-22 (Wright's objections); doc. 225, pp. 50-76 (Magistrate Judge's discussion of Geofence and Tower Dump Warrants).) [8]  The Court agrees with the Magistrate Judge's unobjected-to recommendation that Wright's request to suppress evidence obtained pursuant to the warrants designated (k), (m), and (n) should be denied, (doc. 225, pp. 76-80), and that recommendation is **ADOPTED, in part**, as the opinion of the Court.  The Court will address Wright's objections regarding the Geofence and Tower Dump Warrants in turn.

      A.  _Wright's challenge to the Geofence Warrant._

Wright argues that evidence obtained from Google pursuant to the Geofence Warrant, (doc. 46-11, pp. 28-33), must be suppressed.  (See, e.g., doc. 191, p. 4.)  As the Magistrate Judge explained, Geofence Warrants are:

> a novel but rapidly growing investigatory technique.  [Cit.]  When law enforcement seeks a geofence warrant from Google, it (1) identifies a geographic area (also known as the "geofence," often a circle with a specified radius), (2) identifies a certain span of time, and (3) requests Location History data for all users who were within that area during that time.  [Cit.]  The requested time windows for these warrants might span a few minutes or a few hours.

(Doc. 225, p. 50 (quoting United States v. Chatrie, 590 F. Supp. 3d 901, 914 (E.D. Va. 2022)) (quotations and citations omitted)); see also United States v. Rhine, ___ F. Supp. 3d ___, 2023 WL 372044, at *17 (D.D.C. Jan. 24, 2023) ("Unlike a warrant authorizing surveillance of a known suspect, geofencing is a technique law enforcement has increasingly utilized when the crime

---

[8]  The Minute Entry for the February 16, 2023 hearing lists the warrant designated (i) in the same group as the Geofence Warrant and Tower Dump Warrants; however, the parties agreed at the hearing that Wright's challenge to that warrant is moot.  (Doc. 188 (Minute Entry).)

location is known but the identities of suspects [are] not.").)   Here, the Geofence Warrant authorized the search of Google user data from 50-meter radii from five separate locations for a 4.5-hour period on the day Wright's ex-wife's car exploded.  (Doc. 46-11, pp. 2-3.)   The five locations are (1) the street intersection where the explosion occurred, (2) Wright's ex-wife's residence, (3) Wright's residence, (4) Candler Hospital in Savannah, where Wright's ex-wife was employed, and (5) EEU, where Wright was employed.  (Doc. 225, p. 51.)   The warrant required Google to provide law enforcement with a list of anonymized data captured in the geofence parameters.  (Doc. 46-11, p. 32.)   After Google provided the anonymized data, it was "required to disclose identifying information . . . for the Google Account associated with each device ID about which the government inquires."  (Id.)   Wright argues that "[t]he Geofence Warrant lacked particularized probable cause" because it "swept up user location data of persons unrelated to any criminal activity."  (Doc. 191, p. 5; see also id., p. 4 ("While the government possessed evidence that a crime was committed by someone, . . . the warrant application did not set forth evidence that everyone present at the 5 locations identified in the warrant was guilty of a crime.").)

The Magistrate Judge concluded that, to the extent the Fourth Amendment's warrant requirement applies to the geofencing technique used in this case,[9] it was unconstitutionally

---

[9]   The Magistrate Judge noted that it is unclear whether the geofencing technique at issue required a warrant, particularly in light of the parties' failure to adequately brief the issue.  (Doc. 225, p. 53 n.23.) Given Wright's lack of standing to challenge the warrant, to the extent that it captured data from others, and the applicability of the "good faith exception", discussed below, the Magistrate Judge "assume[d] (but [did] not decide) that the Fourth Amendment's restrictions on searches and seizures apply to the collection of cell phone location history information via a geofence."  (Id., pp. 53-54 n.23 (quoting Matter of Search of Info. that is Stored at Premises Controlled by Google LLC, 579 F. Supp. 3d 62, 74 (D.D.C. 2021) ("District of Columbia").)

Wright, however, spends a significant portion of his objections, (see doc. 238, pp. 13-18), arguing that the geofencing technique "intruded upon his reasonable expectation of privacy in his Location History[.]"  (Id., p. 14 (citing Carpenter v. United States, ___ U.S.___, 138 S. Ct. 2206 (2018)); see also, e.g., id., p. 16 ("Location History's greater precision and frequency of collection means that less time is needed to reveal the 'privacies of life.' "); id., p. 17 ("Google location history is uniquely intrusive because it records movements inside as well as outside, including in private homes. Location History data can also

overbroad and insufficiently particularized.    (See doc. 225, p. 53.)    Nevertheless, he recommended that the Court deny Wright's motion to suppress evidence obtained pursuant to the Geofence Warrant because Wright has not shown that he has standing to challenge it, and because suppression would be inappropriate under the "good faith" exception.   (Id., p. 53.)

"The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search . . . ."   Byrd v. United States, __ U.S. __, 138 S. Ct. 1518, 1530, (2018).   As the Magistrate Judge explained, (doc. 225, pp. 66-67), "[i]n order to have evidence suppressed based on a violation of the Fourth Amendment, a claimant has the burden of proving . . . that the claimant had a legitimate expectation of privacy." United States v. McKennon, 814 F.2d 1539, 1542 (11th Cir. 1987) (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)).   To make the required showing, the individual must demonstrate a "subjective expectation of privacy in the object of the challenged search," and that "society [is] willing to recognize that expectation as legitimate."   Id. at 1542-43.   "An individual's Fourth Amendment rights are not infringed—or even implicated—by a search of a thing or place in which he has no reasonable expectation of privacy."   United States v. Ross, 963 F.3d 1056, 1062 (11th Cir. 2020) (emphasis in original).

The Magistrate Judge concluded that Wright has not shown that he has standing because he premises his suppression argument on the Geofence Warrant's overbreadth as to "individuals

---

stretch back months or years, for as long as the service has been enabled.   For these reasons, . . . Wright had a reasonable expectation of privacy in his Location History.").)   To the extent Wright raises these objections to argue that the geofencing technique required a warrant,  see Carpenter, 138 S. Ct. at 2213 ("When an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable, we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." (quotations and citation omitted)), the objections are unresponsive to the R&R given the Magistrate Judge's assumption that the warrant requirement applies.

other than him, e.g., 'Google accounts [in the geofences] unrelated to the crime,' and 'everyone present at the 5 locations.' " (Doc. 225, pp. 67-68 (quoting doc. 191, p. 4); see also id., p. 68 ("[Wright] has not even suggested that the Geofence Warrant violated a constitutional right as to him, personally." (quotations and citation omitted)).) The Magistrate Judge analogized this case to United States v. Davis, 2022 WL 3009240 (M.D. Ala. July 1, 2022), where the Middle District of Alabama rejected a defendant's argument that he was entitled to suppression because a geofence warrant impermissibly "authorized a search of every Google user who happened to be near certain locations on certain dates[.]" (Doc. 225, pp. 68-69 (quoting Davis, 2022 WL 3009240, at *5).) In his objections, Wright reasserts his argument that suppression is warranted because the overbroad geofence parameters captured data related to individuals other than him. (See, e.g., doc. 238, p. 16 ("[T]he data collected was more than sufficient to reveal individuals in private homes connected to their Wi-Fi, at a hospital, in schools, an unrelated bank, at office parks, and in churches.").) Wright has still not explained why the Geofence Warrant's overbreadth as to other individuals entitles him to suppression in his criminal case, and his objection on this ground is **OVERRULED**. (See also, e.g., United States v. Grandy, 2022 WL 10656674, at *7 (W.D.N.C. Oct. 18, 2022) ("The portions of the tracking warrants which Grandy argues are overbroad concern the collection of information from third-party telephone numbers. As a result, Grandy lacks standing to contest the warrants because his rights were not violated, and he cannot attempt to vindicate the Fourth Amendment rights of a third party.").)

Wright also argues in his objections that the Magistrate Judge's "standing" conclusion is erroneous because Wright "has a reasonable expectation of privacy in his Google (or other provider) data and the geofence warrant here intruded upon his reasonable expectation of privacy

in his Location History[.]"  (Doc. 238, p. 14.)[10]   As the Northern District of Illinois explained, however, "a [canvassing cell-site simulator ("CCSS")][11] warrant may issue when the government has established probable cause that evidence of the crime(s) alleged will be found in a particular place(s) to be searched as identified in the warrant, even if the [warrant] will capture some data from uninvolved phones."   In re Warrant Application for Use of Canvassing Cell-Site Simulator, ___ F. Supp. 3d ___, 2023 WL 1878636, at *12 (N.D. Ill. Feb. 1, 2023) ("Simulator").   The Magistrate Judge noted that "[t]he Government asserts, and Wright does not dispute, that the affidavit supporting the [Geofence Warrant] provided the issuing magistrate a substantial basis for finding probable cause that evidence of the alleged crimes would be found within five geofence parameters."  (Doc. 225, p. 57.)   Wright does not object to that conclusion, nor does he even suggest that the Geofence Warrant issued on insufficient probable cause " 'as to him,' personally." United States v. SDI Future Health, Inc., 568 F.3d 684, 695 (9th Cir. 2009) (quoting Mancusi v. DeForte, 392 U.S. 364, 367 (1968)).   Thus, to the extent the warrant was overbroad, it did not implicate Wright's Fourth Amendment rights (i.e., he lacks Fourth Amendment "standing"); to the extent it implicated his rights, he does not argue that it was based upon insufficient probable cause.

Wright also objects to the Magistrate Judge's conclusion that even if Wright had standing to challenge the Geofence Warrant, suppression would be inappropriate under the good faith exception.  (Doc. 225, pp. 71-73; doc. 238, pp. 18-19.))  The Magistrate Judge explained that "geofence warrants are a novel investigative technique, and their 'permissibility . . . is a complex

---

[10]   Wright imprecisely asserts that "the Magistrate [Judge] found that [Wright] did not show that he had a reasonable expectation of privacy in the devices or accounts searched."  (Doc. 238, p. 14.)  The Magistrate Judge concluded that Wright based his suppression arguments on the Geofence Warrant's overbreadth as to other individuals' data, which is insufficient to establish standing.  (See, e.g., doc. 225, p. 70.)

[11]   The Magistrate Judge explained that the CCSS technology at issue in Simulator "serve[s] a similar function" to geofences, and that the "Simulator Court's discussion of [CCSS] is instructive in this case." (Doc. 225, p. 55 n.24.)   No party has objected to that conclusion.   (See generally docket.)

topic, requiring a detailed, nuanced understanding and application of Fourth Amendment principles, which police officers are not and cannot be expected to possess' ", and noted that "no court had yet ruled on the legality of such a technique" when the Geofence Warrant issued.   (Doc. 225, pp. 72 (quoting Chatrie, 590 F. Supp. 3d at 917, 938).)   He cited multiple cases in which Courts denied motions to suppress evidence obtained pursuant to Geofence warrants under the good faith exception.[12]

In his objections, Wright notes that the Chatrie Court held that the good faith exception saved evidence obtained pursuant to a geofence warrant from suppression when "the government agent who applied for the warrant testified that he had applied for 3 geofence warrants in the past and consulted with government attorneys before obtaining those warrants", whereas "the government elicited no testimony from [the Geofence Warrant applicant] about what she did to ensure that her application for the warrant . . . was lawful."   (Doc. 238, p. 18.)   Wright, however, has still not "even suggest[ed] that officers' conduct was 'deliberate enough to yield meaningful deterrence[.]' "   (Doc. 225, pp. 72-73 (quoting Campbell, 26 F.4th at 886-87).)

Wright also argues that "there should be a higher bar for demonstrating objective reasonableness in cases where officers rely on novel investigative surveillance because a reasonably well-trained officer would recognize that deploying new surveillance tools presents a heightened risk of infringing on constitutional rights."   (Doc. 238, p. 19.)   Wright cites no authority for this proposition, nor does he address the authority discussed by the Magistrate Judge that contradicts it.[13]   Finally, Wright argues in conclusory fashion that "given the warrants[']

---

[12]   (Doc. 225; pp. 71-73 (citing, e.g., United States v. Carpenter, 2023 WL 3352249, at *12 (M.D. Fla. Feb. 28, 2023); United States v. Smith, 2023 WL 1930747, at *12 (N.D. Miss. Feb. 10, 2023); Davis, 2022 WL 3009240, at *9).)

[13]   See, e.g., Carpenter, 2023 WL 3352249, at *12 (denying a motion to suppress evidence obtained pursuant to a geofence warrant under the good faith exception, and noting that "the legality of geofence

overbreadth and failure to satisfy the Fourth Amendment's particularity requirements, no reasonable officer would have relied on the warrant."  (Doc. 238, p. 20.)   A warrant's failure to satisfy the Fourth Amendment's overbreadth and particularity requirements does not bar the application of the good faith exception.   See, e.g., United States v. Addaquay, 2021 WL 1541051, at *5 (N.D. Ga. Apr. 20, 2021) ("[T]he good faith exception would require the denial of Defendant's [Suppression] Motion even if the warrant was overbroad or lacked particularity."). Accordingly, Wright's objections regarding the Geofence Warrant are **OVERRULED**, the R&R is **ADOPTED, in part**, as the opinion of the Court, and his request to suppress evidence obtained pursuant to the Geofence Warrant is **DENIED**.  Doc. 34, in part.

B.   _Wright's challenge to the Tower Dump Warrants._

Wright moves to suppress evidence obtained pursuant to warrants authorizing "tower dumps" from four cellular service providers.  (Doc. 191, pp. 6-7.)   As the Magistrate Judge explained, "[a] tower dump is 'a download of information on all the devices that connected to a particular cell site during a particular interval.' "  (Doc. 225, p. 73 (quoting Wayne R. LaFave, 1 Search & Seizure § 2.7(f) (6th ed. 2022)) (alteration omitted).)   "Here, the Tower Dump Warrants authorized law enforcement to obtain, inter alia, telephone call numbers and 'unique identifiers' for each wireless device in the towers' vicinities, the source and destination phone numbers associated with each cellular communication, the date/time/duration of each cellular communication, and the 'face' of each tower that received each communication."   (Id., pp. 73-74 (citing doc. 46-12, pp. 4-5).)   Wright argues that "[t]he tower dump warrants and searches fail for

---

warrants is a cutting-edge issue based on how recently geofence warrants have been used and challenged."); Chatrie, 590 F. Supp. 3d at 936 ("Despite the warrant's defects, the Court ultimately cannot find that excluding the instant evidence would serve to deter future improper law enforcement conduct.  This is particularly so in light of rapidly advancing technology and lack of judicial guidance on this novel investigatory technique[.]").

the same reason that the geofence warrant fails.   Even though the government here had Mr. Wright in custody, knew his cell phone number and possessed his cell phone, it swept up cellular data for countless uninvolved device users simply because they were found in the place to be searched." (Doc. 191, pp. 6-7.)   The Magistrate Judge rejected this argument, explaining that Wright has not carried his burden of establishing standing.   (Doc. 225, p. 75 ("His suppression argument regarding the Tower Dump Warrants is wholly premised on their overbreadth as to individuals other than him." (emphasis in original)).)

In his objections, Wright reasserts his argument that suppression is warranted because it is overbroad as to other individuals' data.   (See doc. 238, p. 20.)   For the reasons discussed by the Magistrate Judge, (doc. 225, pp. 73-76), that argument fails.   Wright also argues that "obtaining location data from tower dumps infringed on Mr. Wright's reasonable expectation of privacy", and incorrectly asserts that "the Report and Recommendation . . . [found] to the contrary."   (Doc. 238, p. 21.)   The Magistrate Judge noted that "whether a probable cause warrant is required under the Fourth Amendment for the government to obtain 'tower dumps,' [cit.], for short time periods in circumscribed locations where serious criminal conduct occurred, is murky at best", and explained that he "need not determine whether the tower dump download required a warrant" given Wright's lack of standing.   (Doc. 225, p. 76 n.30 (quoting Matter of Search of Info. Associated with Cellular Tel. Towers Providing Serv. to [Redacted] Stored at Premises Controlled by Verizon Wireless, 616 F. Supp. 3d 1, 8 (D.D.C. 2022) (citation omitted)).)   He also noted, in a parenthetical, that "[t]he question of whether there is probable cause to authorize the collection of cell tower dump data is not a difficult one.   In examining an application for a warrant, the Court must inquire as to whether probable cause exists that a crime has been committed and that evidence of the crime will be located at the place to be searched."   (Doc. 225, pp. 74-75 (quoting Matter of Tower Dump

Data for Sex Trafficking Investigation, 2023 WL 1779775, at *3 (N.D. Ill. Feb. 6, 2023).)   The Court is unconvinced by Wright's objections regarding the Tower Dump Warrants because he does not address whether they issued on insufficient probable cause as to Wright.   (See doc. 238, pp. 20-22.)

Finally, Wright tersely argues that "for the same reasons set forth above in reference to the [Geofence Warrant], the [Tower Dump Warrants] are not saved by good faith."   (Doc. 238, p. 22.) Given the Court's rejection of Wright's "good faith" arguments in the Geofence Warrant context, the Court rejects the incorporated arguments in the Tower Dump Warrants context.   Accordingly, Wright's objection on this ground is **OVERRULED**, the R&R is **ADOPTED, in part**, as the opinion of the Court, and his request for suppression of evidence obtained pursuant to the Tower Dump Warrants is **DENIED**.   Doc. 34, in part.

## CONCLUSION

For the foregoing reasons, Wright's objections to the Magistrate Judge's May 25, 2023 R&R are **OVERRULED**.   His suppression motions at docket entries 27, 29, 30, 32, 33 and 34 are **DENIED**.

**SO ORDERED**, this 7th day of September, 2023.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA