## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

UNITED STATES OF AMERICA,

     v.

BARRY WRIGHT,

     Defendant.

CASE NO.: 4:19-cr-149

## O R D E R

Before the Court is the Magistrate Judge's March 8, 2024 Report and Recommendation ("R&R"), (doc. 311), to which Defendant Barry Wright filed objections, (doc. 318).  The Magistrate Judge recommended the Court deny Wright's motions to exclude expert testimony from Lee Hoover, (doc. 220), and Juan Rosado-Marin, (doc. 235).  (Doc. 311, p. 64).  He recommended that Wright's motion to exclude expert testimony from Stephen Shelley, (doc. 205), be granted in part and denied in part.  (Doc. 311, p. 64.)  The Magistrate Judge also recommended that the Court grant Wright's motion to exclude expert testimony from Gregg Mokrzycki, (doc. 234), and the Government's motion to exclude expert testimony from Frederic Whitehurst, (doc. 268).  (Doc. 311, pp. 64-65.)  Wright objects, in part, to the Magistrate Judge's conclusions about Juan Rosado-Marin, Stephen Shelley, and Frederic Whitehurst.  (See doc. 318).  For the reasons below, Wright's objections are **OVERRULED IN PART** and **SUSTAINED IN PART**. (Doc. 318.)  With one limited exception, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation.  (Doc. 311.)  Wright's motions to exclude expert testimony from Lee Hoover and Juan Rosado-Marin are **DENIED**.  (Docs. 220 & 235).  Wright's motion to exclude expert testimony from Stephen Shelley is **GRANTED IN PART** and **DENIED IN PART**.  (Doc. 205).

His motion to exclude expert testimony from Gregg Mokrzycki is **GRANTED**. (Doc. 234). The Government's motion to exclude expert testimony from Frederic Whitehurst is **GRANTED**. (Doc. 268).

## BACKGROUND

As explained in the Court's prior Order, Wright's ex-wife's vehicle "suddenly exploded" while she was driving. (Doc. 111, p. 2.) Investigators later found a device under the driver's seat consisting of circuit boards, switches, wires, batteries, plastic bottles, accelerant, and cardboard cylinders. (Id.) Wright is charged with one count of using a weapon of mass destruction pursuant to 18 U.S.C. § 2332a; one count of using a destructive device during and in relation to a crime of violence pursuant to 18 U.S.C. § 924(c); one count of using fire or an explosive to commit a felony offense under 18 U.S.C. § 844(h); and one count of possession of an unregistered destructive device pursuant to 26 U.S.C. § 5861(d). (Doc. 175.)

The Government offered agents who participated in the investigation as expert witnesses: Lee Hoover, (see doc. 220), Juan Rosado-Marin, (see doc. 235), Stephen Shelley, (see doc. 205), and Greg Mokrzycki, (see doc. 234). Wright, in turn, found his own expert, Frederic Whitehurst. (See doc. 268). In October 2023, the Magistrate Judge conducted a two-day Daubert hearing to evaluate the proposed expert testimony and hear arguments on the parties' competing motions to exclude. (See doc. 285 (Minute Entry for proceedings on October 26, 2023); doc. 287 (Minute Entry for proceedings on October 27, 2023).) After due consideration, the Magistrate Judge issued an R&R on the parties' motions to exclude expert testimony. (Doc. 311.) Wright filed objections.

(Doc. 318.)  The time to respond to those objections passed and the Government has not replied.

(See generally docket.)  The Government did not file any objections.  (See generally docket.)

## ANALYSIS

I.  **Motion to Exclude Expert Testimony of Lee Hoover (doc. 220) and Motion to Exclude Expert Testimony of Gregg Mokrzycki (doc. 234).**

Neither party objects to the Magistrate Judge's recommendation that Wright's motion to the exclude expert testimony of Lee Hoover, (doc. 220), be denied, and his motion to the exclude expert testimony of Gregg Mokrzycki, (doc. 234), be granted.  (Doc. 311, pp. 64-65; doc. 318.)  After a careful de novo review of the entire record, the Court concurs with those recommendations, and **ADOPTS** them.  (Doc. 311, pp. 7-21, 46-59.)  For the reasons discussed by the Magistrate Judge, Wright's motion to exclude expert testimony of Lee Hoover is **DENIED**, (doc. 220), and his motion to exclude expert testimony of Gregg Mokrzycki, (doc. 234), is **GRANTED**.

II.  **Motion to Exclude Expert Testimony of Juan Rosado-Marin (doc. 235).**

Juan Rosado-Marin is a former ATF electrical engineer attached to ATF's Fire Research Laboratory in Maryland.  (Doc. 316, p. 101.)  As an electrical engineer with ATF, he "provide[d] support to the certified fire investigators for ATF in electrical and electronic matters related to how the electricity works and how its related to the fire."  (Id.)  Rosado-Marin has a bachelor's degree in Electronics Engineering Technology with a focus of study on electronic circuits, instrumentation, and industrial systems.  (Doc. 245-1, p. 6.)  During his time with ATF, he attended multiple courses centered on electronics and fire investigations, including a five-day course at the National Fire Academy called "Fire Investigation: Electrical Systems."  (Id., pp. 6-8.)  He is a member of the Intentional Association of Arson Investigators and has his Expert Electrician

License.  (Id., p. 10.)  The Government offers Rosado-Marin "as an expert witness in the field of electrical systems and engineering."  (Doc. 171, p. 5).

Rosado-Marin examined evidence retrieved from the victim's car, including Exhibit 000013 ("carpet containing cardboard tube, wires, circuit board, switches") and Exhibit 000014 ("circuit board with batters attached by write and tape").  (Doc. 235-1, pp. 2-3).  These exhibits are part of the "device" at issue in this case.  (See generally doc. 287-3, pp. 16-17 (marking Exhibits 000013 and 00014 as "Explosives/Bomb")).  In his November 12, 2019 report, Rosado-Marin opined that: (1) "[t]he batteries in the Exhibit 000014 were identified to be consistent with power tool battery packs for use with Milwaukee brand tools," (2) "[t]he cables with quick connectors used on the circuit board connections were consistent with the Hopkins #47965 exemplar cable," (3) "[t]he circuit board was identified to be consistent with a GSM-AUTO electronic device that enables a user to activate the board relays by an incoming call or by SMS messages to the circuit board's cell phone number associated with the inserted SIM card," and (4); "[n]o evidence of electrical failure was observed on Exhibit 000014, however the incoming command string of the SMS message energized the relay #1 coil, closing the contact between terminals 'NO1' and 'COM' and could have energized the associated conductors to these terminals at the time of the incoming SMS messages."  (Doc. 235-1, p. 5.)

Wright moved to exclude Rosado-Marin's identification of possible manufacturers for certain components of the device and his opinion that a string of SMS messages "could have" energized associated conductors.  (Doc. 235, p. 6).  After the Daubert hearing, the Magistrate Judge

recommended that Wright's Motion to Exclude Expert Testimony of Juan Rosado-Marin be denied.  (Doc. 311, pp. 31-32).

Wright makes the following objections to the Magistrate Judge's R&R: (1) Rosado-Marin's opinion that the battery pack and extension cables found in Exhibit 000014 match the exemplars does not satisfy <u>Daubert</u> and the Magistrate Judge erred in concluding otherwise; (2) peer review, error rate, and testing can apply to visual comparisons and the Magistrate Judge erred in stating that they were not; (3) Rosado-Marin's conclusion that the battery pack and cable found in Exhibit 000014 are consistent with the Milwaukee brand battery pack and Hopkins brand cable used as exemplars would not assist the jury and the Magistrate Judge erred in finding otherwise; and (4) Rosado-Marin's conclusion that the SMS messages "could have" energized the conductors in Exhibit 000014 does not "sufficiently establish[] causation" and the Magistrate Judge erred finding that absolute certainty as to causation was not a prerequisite to expert testimony here.  (<u>See</u> doc. 318, pp. 2, 6.)  He no longer challenges Rosado-Marin's opinion that the circuit board in Exhibit 000014 is consistent with a GSM-AUTO electronic device.  (<u>Id.</u>, p. 2 n.1.)

The first three objections challenge the Magistrate Judge's application of <u>Daubert</u> to Rosado-Marin's opinions about the battery pack and extension cables found in Exhibit 00014. After discussing the standards governing the admissibility of expert testimony, the Court will address the merits of Wright's objections.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the United States Supreme Court interpreted Federal Rule of Evidence 702 ("Rule 702"), which governs expert testimony.  The Supreme Court "made abundantly clear" that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence."  <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing <u>Daubert</u>, 509

U.S. at 589 n.7, 597) (emphasis omitted).  The Supreme Court later held that "<u>Daubert</u>'s general holding–setting forth the trial judge's general 'gatekeeping' obligation–applies not only to testimony based on 'scientific knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702).  Having incorporated these decisions, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliability applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Eleventh Circuit has established a three-pronged inquiry encompassing the requirements of <u>Daubert</u>, its progeny, and Rule 702.  Under this inquiry, a court determining the admissibility of expert testimony must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Frazier</u>, 387 F.3d at 1260 (citations omitted); <u>see also</u> <u>Prosper v. Martin</u>, 989 F.3d 1242, 1249 (11th Cir. 2021).  The proponent of the expert bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  <u>Daubert</u>, 509 U.S. at 592, n.10. The ultimate objective of a court's <u>Daubert</u> gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152.  As discussed below, Wright's objections to the Magistrate Judge's application of Daubert to Rosado-Marin's opinions on the battery pack and cable found in Exhibit 000014 touch on all three Daubert prongs: "qualification," "reliability," and "helpfulness."

For the first prong, "experts may be qualified in various ways.  While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Frazier, 387 F.3d at 1260-61; see also Fed. R. Evid. 702 (A witness may be qualified as an expert by "knowledge, skill, experience, training, or education.").  In determining qualification, courts generally look to a proposed expert's education and experience and ask whether the witness's intended testimony is sufficiently within his or her area of expertise.  See Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).  That said, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." Frazier, 387 F.3d at 1261 (emphasis in original).

Consequently, reliability, the second prong, "remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261.  The Supreme Court in Daubert "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted).  These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the

field." <u>Id.</u> (citation omitted).  "Sometimes the specific <u>Daubert</u> factors will aid in determining reliability; sometimes other questions may be more useful.  As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" <u>Frazier</u>, 387 F.3d at 1262 (quoting <u>Kumho Tire</u>, 526 U.S. at 152).  "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" <u>Id.</u> at 1261 (emphasis in original).

Finally, expert opinion testimony must also assist the trier of fact.  Fed. R. Evid. 702(a).  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." <u>Frazier</u>, 387 F.3d at 1262 (citation omitted).  Proffered expert testimony generally will not help the trier of fact, and is inadmissible, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Cook v. Sheriff of Monroe Cnty.</u>, 402 F.3d 1092, 1111 (11th Cir. 2005) (citation omitted).  Put differently, expert testimony that offers something "beyond the understanding and experience of the average citizen" helps the trier of fact and can be admitted.  <u>Id.</u> (quoting <u>United States v. Rouco</u>, 765 F.2d 983, 995 (11th Cir. 1985)).

### A.  Application of <u>Daubert</u>

#### i.  Qualification

Wright appears to suggest that Rosado-Marin is not qualified to opine that the battery and cable in Exhibit 000014 are consistent with a Milwaukee brand battery and Hopkins brand cable.  (<u>See</u> doc. 318, pp. 3-4.)  He notes that Rosado-Marin has never testified as an expert witness

regarding battery and cable characteristics or participated in any trainings specific to "the consistency or inconsistency" of different brands of battery cell packs or cables.  (Id.).  These observations waive at an argument–but do not make one.  Wright must "*clearly* advise the district court and *pinpoint* the *specific* findings that [he] disagrees with" to preserve his objection.  United States v. Shultz, 565 F.3d 1353, 1360 (11th Cir. 2009) (emphasis added).  Passing commentary about what Rosado-Marin has or has not previously testified to or taken a class on does not specifically articulate an objection or the basis for that objection.  The Court need not consider "conclusive[] or general objections."  Id. at 1361 (internal citation omitted).

Even if Wright's observations could have raised an argument for the Court's consideration, this is the first time Wright has challenged Rosado-Marin's qualifications to offer these two opinions.  (See doc. 235 (not challenging Rosado-Marin's qualifications as to these opinions); doc. 250 (same); see also doc. 311 at 22 ("Wright argues that the . . . opinions" regarding possible manufactures of the electronic components found in Exhibit 000014 "are not reliable and will not assist the trier of fact.").)  The Court "has discretion to refuse to consider matters raised for the first time in an objection to a magistrate judge's report and recommendation."  Frank v. United States, 789 F. App'x 177, 179 (11th Cir. 2019) (citing Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009) ("We conclude that the district court has broad discretion in reviewing a magistrate judge's report and recommendation, and, therefore, the district court did not abuse its discretion in declining to consider [an] . . . argument that was not presented to the magistrate judge.")).

Because Wright's "objection" to Rosado-Marin's qualifications is not made with sufficient specificity and is being raised here for the very first time, the Court need not consider it.  See Shultz, 565 F.3d at 1360-61; McNeil, 557 F.3d at 1291.  All the same, in the interest of conducting

a complete review of the record, the Court will briefly address Rosado-Marin's qualifications to opine as to possible manufacturers of the battery cell pack and cable found in Exhibit 000014 and why Wright's attempted objection is meritless.

First, with respect to the battery cell pack, Rosado-Marin testified repeatedly at the <u>Daubert</u> hearing that he had extensive experience with different brands of power tools that use battery cell packs like the one recovered from Exhibit 000014.  (<u>See</u> doc. 316, pp. 136, 154, 176.)  Experts may be qualified based on their experience.  <u>See</u> <u>Frazier</u>, 387 F.3d at 1260-61.  Rosado-Marin's testimony about his experience working with and identifying battery cell packs from different brands of power tools is enough to establish his qualification to identify a potential manufacturer of a battery cell pack by a preponderance of the evidence.  <u>See</u> <u>Daubert</u>, 509 U.S. at 592 n.10.  This conclusion is consistent with the "liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony."  <u>Id.</u> at 588 (internal quotations omitted).

Second, with respect to the cable, Rosado-Marin testified at the <u>Daubert</u> hearing that he received training on characteristics of connector cables.  (<u>See</u> doc. 316, p. 170.)  In an exchange with defense counsel, Rosado-Marin testified that had learned about the characteristics of connector or extension cables as part of his education and described what he had been taught.  (<u>Id.</u>)  He was clear that he "ha[d] that kind of education."  (<u>Id.</u>)  Defense counsel then asked again if Rosado-Marin had ever "received any training in the recognition of characteristics of connector cables," and, this time, Rosado-Marin said, "No."  (<u>Id.</u>)  While the discrepancy in Rosado-Marin's testimony is confusing, he did at first answer that he had received training on the characteristics of cables as part of his formal education and was able to describe that education in some detail.  (<u>Id.</u>)  The Court credits his initial claim that he received the relevant training as part of his education, and finds that this establishes his qualification to opine as to the cable in Exhibit 000014.  To the

extent the inconsistency in his testimony constitutes a "weakness" in his opinion, that weakness "go[es] to the weight and not the admissibility of the testimony." Jones v. Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988).

Again, Wright's general observations about what Rosado-Marin has or has not previously testified to or taken a course on does not "clearly advise the district court [of his objection] and pinpoint the specific findings that [he] disagrees with." Shultz, 565 F.3d at 1360. Those observations are also untimely, and the Court does not have to entertain them. See Williams, 557 F.3d at 1291. Even so, the Court has considered his concerns, and even if Wright raises a discernable objection about Rosado-Marin's qualifications, that objection is **OVERRULED**. (See doc. 318, pp. 3-4.)

### ii. Reliability

Wright strenuously objects to the Magistrate Judge's "statement that '[p]eer review, error rate, [and] testing are not applicable to visual comparison.'" (Doc. 318, p. 4 (quoting doc. 311, p. 23).) The Court **SUSTAINS** this objection. Wright has pointed to several circumstances wherein visual comparison is a major component of the investigative methodology, and courts have considered whether those methodologies have been peer reviewed, have a known error rate, and have been tested as part of the Daubert analysis. (See doc. 318, p. 4.) See, e.g., United States v. Green, 405 F. Supp. 2d 104, 117-22 (D. Mass. 2005) (applying Daubert to toolmark ballistics testing even though the relevant methodology is "based on observations of physical objects"). Asserting that "[p]eer review, error rate, [and] testing are not applicable to visual comparisons" is

overly broad and, as a result, inaccurate; the Magistrate Judge erred in making that particular statement.  (Doc. 311, p. 23.)

Even so, the Court agrees with the Magistrate Judge's underlying conclusion that the lack of peer review, known error rate, and testing is not persuasive here.  (See doc. 311, p. 23.) "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful.  As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'"  Frazier, 387 F.3d at 1262 (quoting Kumho Tire, 526 U.S. at 152).  The Court finds that Rosado-Marin's visual comparison was reliable based on considerations other than peer review, known error rate, and formal testing.

At the Daubert hearing, Rosado-Marin described how his experience guided him to select a Milwaukee brand battery as an exemplar:

> Because I am working with different power tools, for instance, Dewalt . . . [t]hey use yellow.  Other one use like green.  Bosch could be used like black.  So they are color.  But not only the color, because it's possible that another manufacturer decide to do something with other color, but I also recognize the layout on top, how the terminal are laid out and everything, and I saw, this match with a Milwaukee battery.

(Doc. 316, p. 136.)  To confirm his hypothesis, he conducted an internal examination of both the battery from Exhibit 000014 and the exemplar.  (Id., pp. 136-38.)  He considered the color of the wiring, the thickness of the wire strands, the plastic molding shape, the battery's cell arrangement, and the battery contact layout on top of the battery pack.  (Id., p. 138; see also doc. 235-1, p. 4.) In comparing the cable from Exhibit 000014 to the Hopkins exemplar, he found that the conductor

insulation colors, black plastic mold of the connectors, metal connector shapes, quantity of copper strands, and the diameter of the copper strands were consistent.  (Doc. 235-1, p. 4.)

Rosado-Marin clearly articulated how he applied his experience and education to conclude that the battery and cable in Exhibit 000014 were consistent with a Milwaukee brand battery and a Hopkins brand cable.  Cf. Frazier, 387 F.3d at 1261 (holding that expert's testifying based on their experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts" (internal quotations omitted)).  He identified specific, measurable similarities between the evidence and the exemplars.  Other engineers in the ATF Fire Research Lab reviewed and ratified his conclusions.  (Doc. 235-1, p. 6; see also doc. 316, pp. 111-12.)  Exercising its "considerable leeway" to determine reliability, see Kumho Tire, 526 U.S. at 152, and for the reasons stated above, the Court finds that Rosado-Marin's visual comparisons were reliable.  Cf. Brown, 415 F.3d at 1267-68 (finding that a trial court did not err in allowing experts to testify based on "visual comparisons . . . combined with expert knowledge"); United States v Santiago, 202 F. App'x 399, 401 (11th Cir. 2006) (holding that an ATF investigator's methodology was reliable when, among other things, his "findings were subject to review by his co-workers and supervisors").

Wright also suggests that Rosado-Marin's conclusion about the cable cannot be reliable because Lee Hoover, an ATF agent on the scene, informed him that Hopkins brand packaging had been found at Wright's home.  (See doc. 318, pp. 2, 4-5; see also doc. 316, pp.67-68.)  Since a possible brand was "fed" to him, Wright argues, his examination cannot have been conducted "with the scientific rigor required of Daubert."  (Doc. 318, pp. 4-5.)  But Rosado-Marin's conclusion is not that the cable found in Exhibit 000014 was definitively manufactured by Hopkins to the exclusion of all other manufacturers.  He simply concludes that the cable was *consistent*

with a Hopkins brand cable.  After conducting a reliable visual comparison, he concluded that certain, significant features of the cable–"conductor insulation colors, black plastic mold of the connectors, metal connector shapes, quantity of the co[p]per conductor strands and their diameter"–matched the features of a Hopkins brand cable.  (Doc. 235-1, p. 4.)  That Rosado-Marin knew agents recovered Hopkins packaging from a suspect's home has no bearing on the rigorousness or reliability of his one-to-one comparison of the cable in Exhibit 000014 and the exemplar Hopkins cable.  Even if Rosado-Marin's failure to compare the cable in Exhibit 00014 to cables from other brands is a "weakness" in his opinion, that weakness "go[es] to the weight and not the admissibility of the testimony."  Jones, 861 F.2d at 663.  Wright may expose that weakness through "[v]igorous cross-examination" and the "presentation of contrary evidence."  Daubert, 509 U.S. at 596.

Wright's objection to the Magistrate Judge's assertion that "[p]eer review, error rate, [and] testing are not applicable to visual comparisons," (doc. 311, p. 23) is **SUSTANED**.  (Doc. 318, p.4.)  The Magistrate Judge erred in making that particular overly broad statement.  All other objections to the Magistrate Judge's analysis of Rosado-Marin's reliability under Daubert are **OVERRULED**.  (Id., pp. 4-5.)

### iii.  Helpfulness

Wright also objects to the Magistrate Judge's conclusion that Rosado-Marin's testimony about possible manufacturers of the battery and cable found in Exhibit 000014 would help the jury, (doc. 311, p. 25-27), arguing that this testimony consists of nothing more than observations the jury could make on its own, (doc. 318, pp. 5-6).  The Court disagrees.  The Magistrate Judge was correct in finding that Rosado-Marin's visual comparisons go beyond "unexplained interpretations of . . . evidence that the jury itself is fully capable of reviewing" and instead "explains something

'beyond the understanding and experience of the average citizen.'"  Jackson v. Catanzariti, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (quoting United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985)).  Rosado-Marin pointed to specific, highly technical design features shared between the electronic components found in Exhibit 00014 and his exemplars that led him to believe the battery and cable found at the scene were consistent with a Milwaukee brand battery and Hopkins brand cable.  (See doc. 235-1, pp. 3-4).  "Recognizing specific, technical characteristics of electronic components and identifying them as both significant and similar requires something beyond the understanding and experience of the average citizen."  (Doc. 311, p. 27 (internal quotations and citations omitted).)  Rosado-Marin offers more than mere "conclusory observations."  Jackson, 2019 WL 2098991, at *10.  The Court, therefore, **OVERRULES** this objection.  (Doc. 318, pp. 5-6.)

### B.  Level of Certainty Required to Testify on Causation

Wright also objects to the Magistrate Judge's conclusions that absolute certainty on causation, in terms of what may have caused the device at issue to be activated, is not required for expert testimony to be relevant and admissible.  (Doc. 318, pp. 6-7; see also doc. 311, pp. 30-31.) He objects to Rosado-Marin being allowed to testify as that an incoming SMS message or string of messages "could have" energized the device because "this is a criminal case where the government's burden of proof is beyond a reasonable doubt."[1]  (Doc. 318, p. 6.)  This portion of Wright's brief is sparse, but he seems to argue that there must be a direct correlation between the

---

[1] Wright also discusses cases requiring the government to establish different types of causation (but-for causation, proximate causation, etc.) before certain sentencing enhancements will apply to defendants in various criminal contexts.  (See doc. 318, pp. 6-7).  How those cases apply here is unclear.  Wright does not explain how requiring the prosecution to prove different levels of causation before sentencing enhancements can be applied is relevant to whether an expert may testify that an explosive device could have been triggered in a particular way.  (Id.)  The Court gives this "argument," if it can be called that, no weight.

burden of proof and a proposed expert's degree of certainty.  Wright appears to take the stance that because this is a criminal case, for his testimony to be admissible, Rosado-Marin must state that an incoming SMS message actually *did* energize the device, not just that an SMS message *could have* energized the device.

He is incorrect for two reasons.  First, there is no requirement in criminal cases that any one piece of evidence be sufficient to establish an element of the charged offense beyond a reasonable doubt on its own.  Second, Rosado-Marin's opinion goes to the overall construction of the device, which is directly relevant to whether the device was designed as a weapon and can be classified as a destructive device as that term is defined in 18 U.S.C. § 921(a)(4) and 26 U.S.C. § 5845(f).  Both provisions provide that "[t]he term 'destructive device' shall not include any device which is neither *designed* nor r*edesigned* for use as a weapon."  18 U.S.C. § 921(a)(4) (emphasis added); 26 U.S.C. § 5845(f) (emphasis added).  Wright has been charged with using and possessing a destructive device, (see doc. 175), and whether the device found underneath his ex-wife's car seat was designed as a weapon is therefore a "fact of consequence in determining this action."  Fed. R. Evid. 401(b).

> [N]o particular design is required for a destructive device to be designed as a weapon.  Rather, the critical inquiry is whether the device, as designed, has any value other than as a weapon.  [Cit.]  In this inquiry, the presence of a design features that eliminate any claimed entertainment or other benign value supporting a finding that the device was designed as a weapon.

United States v. Hammond, 371 F.3d 776, 781 (11th Cir. 2004).  Because the charges against Wright require an inquiry into the design features of the device, Rosado-Marin's opinion about a

design feature–how the device might be activated–is relevant under Rule 401 of the Federal Rules of Evidence.  Accordingly, this objection is **OVERRULED**.  (Doc. 318, pp. 6-7.)

### C.  Rule 403

Finally, Wright argues that Rosado-Marin's testimony should be excluded under Rule 403 of the Federal Rules of Evidence "because the government is presenting comparison testimony under the guise of expert testimony, which 'may be assigned talismanic significance in the eyes of lay jurors.'"  (Doc. 318, p. 6 (quoting Frazier, 387 F.3d at 1263)).  This is the first time Wright makes this argument.  See doc. 235 (not making any argument about Rule 403); doc. 250 (same).  The Court, therefore, does not have to address it.  See Williams, 557 F.3d at 1291.  But, again, in the interest of being thorough, the Court will briefly address Wright's concerns.

"Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, [cit.], or if the expert testimony is cumulative or needlessly time consuming."  Frazier, 387 F.3d 1263 (internal citation omitted).  The Court does not find that the value of Rosado-Marin's testimony is substantially outweighed by its potential to confuse or mislead the jury and it is not needlessly time consuming.  Even if Wright has objected to Rosado-Marin's testimony's admissibility under Rule 403, that objection is **OVERRULED**.  (Doc. 318, p. 6.)

### D.  Conclusion

After a careful de novo review of the record, the Court **OVERRULES** all but one of Wright's objections to the Magistrate Judge's recommendation to permit Rosado-Marin to offer expert testimony.  (Doc. 318).  The Court **SUSTAINS** Wright's objection to the following sentence: "Peer review, error rate, [and] testing are not applicable to visual comparisons."  (Id., p. 4; see doc. 311, p. 23.)  That statement was a generalization and, as a result, not entirely accurate.

The Court **ADOPTS** the Magistrate Judge's recommendation as the opinion of the Court, (doc. 311, pp. 21-32), except as to the singular statement that "[p]eer review, error rate, [and] testing are not applicable to visual comparisons," (id., p. 23).  Wright's Motion to Exclude Expert Testimony of Juan Rosado-Marin is **DENIED**.  (Doc. 235).

### III.    Motion to Exclude Expert Testimony of Stephen Shelley (doc. 205).

Stephen Shelley is a Senior Explosives Enforcement Officer with ATF who the Government offers "as an expert witness in the field of explosive and destructive device determinations."  (Doc. 171, p. 8).  Shelley offered the following opinion in his expert report:

> [I]t is the opinion of the assigned that the device in this investigation was designed as an incendiary weapon and would be properly identified as an improvised incendiary bomb.  Incendiary bombs are destructive devices as that term is defined in 26 U.S.C., section 5845(f) and would be regulated in accordance with the Federal Firearms Regulations.

(Doc. 205-1, p. 3).  Wright moved to exclude Shelley partially on the grounds that this opinion constituted a legal conclusion and was therefore inadmissible under the helpfulness prong of Daubert.  (Doc. 205, pp. 4-5.)  See Frazier, 387 F.3d at 1262-63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

The Magistrate Judge recommended that Wright's Motion to Exclude Expert Testimony by Officer Shelly be granted in part and denied in part.  (Doc. 311, p. 46.)  On whether Shelley's opinion constituted a legal conclusion, he specifically recommended that:

> Shelley should be prohibited from explicitly invoking or testifying as to the contents of 26 U.S.C. § 5845(f), but he should be permitted to opine that the device was designed as an incendiary weapon, that the device was an improvised incendiary bomb, and that the device was a destructive device.  [Cit.]  He should also be permitted to define those terms as he understands them as an ATF officer

an explosives expert, so long as he does not testify as to how his definitions
compare to the statute.

(Id.)  Wright objects on two grounds: first, the Magistrate Judge only prohibited Shelley from
cabining his opinions with statutory definitions and did not explicitly prohibit him testifying about
regulatory definitions, (doc. 318, p. 8); second, even if Shelley is prohibited from testifying on the
contents or requirements of the law, his opinions still constitute legal conclusions, (id., pp. 7-8).

Expert witnesses may not "testify to the legal implications of conduct; the court must be
the jury's only source of law." Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11
Cir. 1990).  But "the distinction between whether challenged testimony is either an admissible
factual opinion or an inadmissible legal conclusion is not always easy to perceive." Hanson v.
Waller, 888 F.2d 806, 811 (11th Cir. 1989).  Whether the device at issue is an incendiary weapon,
improvised incendiary bomb, or destructive device and whether the device is of a type that it
needed to be registered may be questions of fact rather than questions of law.  If so, Shelley may
opine as to the nature or classification of the device without invading the province of the Court or
jury.

As the Magistrate Judge pointed out in his R&R, (doc. 311, p. 43), courts often treat the
question of a device's proper classification under federal law and whether that device must be
registered as questions of fact.  See United States v. Buchanan, 787 F.2d 477, 483-84 (10th Cir.
1986) ("Whether the nature of a particular device is such that it must be registered is an ultimate
fact question."); United States v. Zajac, 2010 WL 3546782, at *6 (D. Utah Sept. 9, 2010) (allowing
an ATF expert to testify that a device was a destructive device and that it was "the type of device
that had to be registered with ATF"); cf. United States v. Hoover, 635 F. Supp. 3d 1305, 1320
(M.D. Fla. 2022) ("whether the device at issue constitutes a machinegun under [26 U.S.C.]
§ 5845(b)" is "an issue of fact").  The Eleventh Circuit has not definitively ruled on this issue, but

19

it often accepts the kind of device classification testimony Wright seeks to prevent Shelly from offering.  See United States v. Spoerke, 568 F.3d 1236, 1243 (11th Cir. 2009) (accepting that an ATF explosive enforcement officer opined that the defendant's "pipe bombs were 'destructive devices' under federal law"); United States v. Kircus, 610 F. App'x 936, 937 (11th Cir. 2015) (accepting that the government's experts testified that a device "was, in their opinion, designed to be an improvised explosive bomb"); United States v. Pisa, 701 F. App'x 781, 783 (11th Cir. 2017) (accepting that an explosives expert with ATF testified that a device "fit the characterization of an explosive bomb"); cf. United States v. Wilson, 979 F.3d 889, 904-05 (11th Cir. 2020) (accepting that an ATF expert testified that a shotgun was not "an antique firearm" or a "replica of an antique firearm" within the meaning of 26 U.S.C. § 5845(g) because the weapon at issue did not satisfy the statute's criteria for antique firearms).

The Court agrees with the Magistrate Judge that the approach used by the United States District Court for the District of Utah in Zajac best addresses how to navigate the fine line between admissible fact opinions and inadmissible, unadorned legal conclusions.  (See doc. 311, pp. 43-44.)  In Zajac, an explosives expert with ATF was allowed to offer a conclusion about the nature of a device, but was not allowed to explicitly invoke the statutory definition; he was permitted to testify that "the device [is] a destructive device" and "the device at issue is the type of device that had to be registered with ATF," but not that "[e]xplosive bombs are destructive devices as that term is defined in [26 U.S.C. § 5845(f)]."  Zajac, 2010 WL 3546782, at *6 (internal quotations omitted).  Testimony about the nature or classification of a device, when rooted "in the context of the totality of [an expert's] factual findings," is an admissible fact opinion.  Zajac, 2010 WL 3546782, at *6.  Testimony that explicitly cites the contents of a particular statute, however,

"constitutes an instruction to the jury" about the law and is impermissible.  Id.; see also

Montgomery, 898 F.2d at 1541.

For these reasons, and after a careful de novo review of the record, the Court

**OVERRULES** Wright's objection as to Shelley, (doc. 318, pp. 7-8), and **ADOPTS** the Magistrate

Judge's recommendation (doc. 311, pp. 32-46).  Wright's Motion to Exclude Expert Testimony

by ATF Officer Stephen Shelley is **GRANTED IN PART** and **DENIED IN PART**.  (Doc. 205.)

Shelley may state that the device was designed as an incendiary weapon, that the device was an

improvised incendiary bomb, that the device was a destructive device, and that the device was the

type of device that would be subject to regulations.  His opinions about the device's classification

must be grounded in "the context of the totality of his factual findings" and cannot be presented to

the jury as summary conclusions.  Zajac, 2010 WL 3546782, at *6.  He may not testify that

"[i]ncendiary bombs are destructive devices as that term is defined in 26 U.S.C., section 5845(f),"

and he may not specifically cite any statutes or regulations.[2]  (Doc. 205-1, p. 3.)  But he may define

terms like "incendiary bomb" or "destructive device" as he understands and uses them as an ATF

officer and explosives experts, even if the definitions he offers match the language in a statute or

regulation.  So long as Shelley does not testify that the definitions he offers *are* the statutory or

regulatory definitions, his testimony will not "constitute[] an instruction to the jury that a [specific

term] meets the legal definition" of that term as defined by law.  See Zajac, 2010 WL 3546782, at

*6.  The parties are advised "that a fine line exists between what testimony is admitting and what

---

[2] Shelley's opinion does not contain any regulatory definitions.  (See doc. 205-1, p. 3).  Wright's contention that Shelley "will be *unable* to avoid regulatory definitions" is unfounded.  (See doc. 318, p. 8 (emphasis added)).  Wright raises the specter of regulatory definitions for this first time in his objections.  (See doc. 205 (not raising an issue as to Shelley potentially defining regulations for the jury); see doc. 217 (same)).  Therefore, the Magistrate Judge did not err in not specifically addressing regulatory definitions.  That objection is **OVERRULED**.  (Doc. 318, p. 8).  Nevertheless, because the concern is that Shelley may instruct the jury as to "the law," the Court clarifies that the ban on invoking statutory definitions extends to invoking regulatory definitions.

is not.  The line pertains not only to the ultimate opinion of the expert, but also to how the government states its questions."  Id., at *7.

## IV.    Motion to Exclude Expert Testimony of Frederic Whitehurst (doc. 268).

Frederic Whitehurst is a former FBI Supervisory Special Agent.  (See doc. 268-2.)  During his 12 years with the FBI Laboratory, and afterward as a forensic consultant, Whitehurst investigated nearly one-thousand cases involving improvised explosive devices ("IEDs").  (See id.; see also doc. 316, p. 229.)  In addition to performing hands-on examinations of recovered devices, he also oversaw the reconstruction of hundreds of IEDs.  (Doc. 316, p. 231.)  Wright offers him as an expert in IEDs, qualified through his experience.  (See doc. 273, pp. 2-3.)  Whitehurst opined that "[n]o specialized tools or skills would be needed to construct the device in this case," (id., p. 4), and the "cables and connections found by investigators in this case were no more likely to have been manufactured by Hopkins than by any one of a number of other makes," (doc. 268-1, p. 4).

After the Daubert hearing, the Magistrate Judge recommended that the Government's motion to exclude expert testimony from Whitehurst be granted on the grounds that Wright failed to show how Whitehurst's experience investigating and reconstructing IEDs–with a particular specialty in pipe bombs–qualified him to opine on a device constructed with an SMS card or reach a conclusion about who may have manufactured a particular cable.  (Doc. 311, pp. 62-64).  Wright accepts the Magistrate Judge's conclusion that Whitehurst is not qualified to opine as to the lack of need for specialized tools or skills to construct the particular device at issue.  (Doc. 318, p. 9 n.4).  He objects, however, to the Magistrate Judge's recommendation that Whitehurst should be excluded from testifying that the cables recovered in Exhibit 000014 are no more likely to have been made by Hopkins than any other manufacturer.  (Id., pp. 8-9.)  Wright insists that

Whitehurst's experience reconstructing IEDs "permits him to talk about component parts of those devices including cables and wiring." (Id., p. 9).

But as the Magistrate Judge correctly pointed out in his R&R, Whitehurst "did not testify as to any experience identifying or distinguishing cables or wires related to his experience with improvised explosive devices." (Doc. 311, p. 63; see also doc. 316, pp. 226-77.) He did not testify that he had ever seen or worked with any devices that used cables or connectors. (Doc. 316, pp. 226-27.) In fact, he did not offer any testimony at the Daubert hearing related to his opinion that the cable in Exhibit 000014 was just as likely to be a Hopkins cable as any other brand of cable. (Id.) His expert report only offers the conclusory statement that his "opinions stated herein are based upon [his] training and experience." (Doc. 268-1, p. 4.)

Wright bears the burden of establishing Whitehurst's qualifications by a preponderance of the evidence. Daubert, 509 U.S. at 592, 592 n.10. Since he has not explained how Whitehurst's experience reconstructing improvised explosive devices qualifies him to identify a potential cable manufacturer, Wright has not met his burden. See Frazier, 387 F.3d at 1261. Accordingly, after a careful de novo review of the record, this objection is **OVERRULED**. (Doc. 318, pp. 8-9). The Court concurs with the Magistrate Judge's recommendation as to Whitehurst, (doc. 311, pp. 59-64) and **ADOPTS** it as the Court's opinion. The Government's Motion to Exclude Defense Expert Testimony of Frederic Whitehurst is **GRANTED**. (Doc. 268.)

## CONCLUSION

After a careful de novo review of the record, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as the Order of the Court (doc. 311), except as to the following sentence: "Peer review, error rate, [and] testing are not applicable to visual comparisons," (id., p.

23).  Wright's objection to that one sentence is **SUSTAINED**.  (Doc. 318, p. 4).  Wright's other objections are **OVERRULED**.  (Id.)

Wright's motions to exclude expert testimony from Lee Hoover and Juan Rosado-Marin are **DENIED**.  (Docs. 220 & 235).  Wright's motion to exclude expert testimony from Stephen Shelley is **GRANTED IN PART** and **DENIED IN PART**.  (Doc. 205).  His motion to exclude expert testimony from Gregg Mokrzycki is **GRANTED**.  (Doc. 234).  The Government's motion to exclude expert testimony from Frederic Whitehurst is **GRANTED**.  (Doc. 268).

**SO ORDERED**, this 3rd day of May, 2024.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA